*John Matthew Woodlin v. State of Maryland*, No. 22, September Term, 2022. Opinion by Eaves, J.

**CRIMINAL LAW — MARYLAND REPEAT SEXUAL PREDATOR PREVENTION ACT OF 2018 — STATUTORY INTERPRETATION** The Supreme Court of Maryland held that the Maryland Repeat Sexual Predator Prevention Act of 2018, codified under the Courts and Judicial Proceedings Article, § 10-923, does not require a circuit court to consider any particular factor when it determines whether the probative value of the evidence the State seeks to admit outweighs the danger of unfair prejudice under § 10-923(e)(4). Rather, the Court explained that there is an array of factors that a circuit court can consider, and the Court provided a non-exhaustive list of appropriate factors to guide the circuit courts in future cases.

**CRIMINAL LAW — MARYLAND REPEAT SEXUAL PREDATOR PREVENTION ACT OF 2018 — ADMISSIBILITY OF PROPENSITY EVIDENCE** The Supreme Court of Maryland held that the circuit court did not abuse its discretion in determining that the probative value of Petitioner's 2010 conviction, where Petitioner inserted foreign objects into an unconscious adults male's rectum, outweighed the danger of unfair prejudice in Petitioner's current case, where he sexually assaulted his grandson by performing fellatio on him and touching and licking his grandson's buttocks.

**APPELLATE PROCEDURE — WAIVER** The Supreme Court of Maryland held that Petitioner failed to preserve for appeal his argument that the circuit court erred in failing to *sua sponte* limit the scope of the evidence of his 2010 conviction after ruling that said evidence was admissible.

Circuit Court for Wicomico County
Case No. C-22-CR-19-000613
Argued: April 4, 2023

IN THE SUPREME COURT
OF MARYLAND*

No. 22
September Term, 2022

JOHN MATTHEW WOODLIN

v.

STATE OF MARYLAND

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Opinion by Eaves, J.

Filed: July 26, 2023

* At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

A common law rule in American jurisprudence prohibits a government from using in the criminal prosecution of a defendant "evidence of [that] defendant's evil character to establish a probability of his [or her] guilt."[1] Such evidence includes the defendant's "prior trouble with the law, specific criminal acts, or ill name among his [or her] neighbors[.]"[2] This rule exists not to give a defendant a leg up in any criminal prosecution, but rather because such evidence likely will "weigh too much with the jury and . . . overpersuade [it so] as to prejudge one with a bad general record[,]" denying the defendant a fair opportunity to defend against crimes alleged by the government.[3]

Maryland common law generally prohibits the use of character evidence to show a person's propensity to act in accordance with their character traits or prior bad acts, but sexual assault trials have long been recognized as meriting a partial exception to the bar on propensity evidence.[4] This common law exception is limited to evidence of the defendant's other sexually assaultive conduct that is both *similar* to the act for which he or she currently is charged and toward the *same* victim.[5]

---

[1] *Michelson v. United States*, 335 U.S. 469, 475 (1948) (footnote omitted).

[2] *Id.*

[3] *Id.* at 476.

[4] *See Acuna v. State,* 332 Md. 65, 74–75 (1993); *United States v. Castillo*, 140 F.3d 874, 881 (6th Cir. 1998).

[5] *See Vogel v. State*, 315 Md. 458, 466 (1989) (establishing the rule that evidence of a defendant's other sexually assaultive behavior—against the same victim and of the same type—is admissible); *State v. Westpoint*, 404 Md. 455, 492 (2008); *Hurst v. State*, 400 Md. 397, 416–17 (2007) (declining to expand the exception announced in *Vogel*).

Expanding on that common law exception, the General Assembly passed the Maryland Repeat Sexual Predator Prevention Act of 2018, codified under the Courts and Judicial Proceedings Article ("CJP") (1974, 2020 Repl. Vol.) as § 10-923, to allow the State to move to introduce in a criminal trial for certain sexual offenses evidence of the defendant's "other sexually assaultive behavior" that occurred either before or after the crime currently charged. Under CJP § 10-923, the State may introduce evidence of prior sexually assaultive behavior involving different victims to help establish credibility in qualifying sexual assault cases. The statute was enacted in recognition that many sexual assault offenses occur in private and may not generate any physical evidence.[6] The admissibility of evidence under CJP § 10-923 depends on two necessary, sequential events: (1) the State proving at a required hearing four criteria and (2) the circuit court then exercising its discretion in favor of admissibility.

John Matthew Woodlin, Petitioner, was arrested and charged with child sexual abuse and other related sexual offenses against his ten-year-old grandson, A.H.[7] Before trial, the State timely moved pursuant to CJP § 10-923 to introduce evidence of Petitioner's 2010 conviction (by way of a guilty plea) for sexual assault against a different individual, and, after the required hearing, the circuit court granted that motion. At trial, consistent with the circuit court's ruling, the State introduced evidence of Petitioner's prior

---

[6] S.B. 270, 2018 Reg. Sess., Fisc. & Pol'y Note.

[7] Like the intermediate appellate court below, for privacy reasons, we refer to the minor victim by the initials "A.H.," which reflect neither his given name nor surname. *Woodlin v. State*, 254 Md. App. 691, 696 n.1 (2022).

2

conviction, and he ultimately was convicted by a jury; he noted a timely appeal. The

Appellate Court of Maryland[8] affirmed the circuit court's decision to put before the jury

evidence of Petitioner's 2010 offense and affirmed his conviction in this case.

Petitioner sought review in this Court, and we granted certiorari, 482 Md. 31 (2022),

to answer the following questions, which we have rephrased[9]:

---

[8] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

[9] This Court has authority to rephrase the questions presented. *United Parcel Serv. v. Strothers*, 482 Md. 198, 205 (2022). The original questions for which we granted certiorari are:

1. As a matter of first impression, under Md. Cts. & Jud. Proc. Art. §10-923, which permits the admission in certain circumstances of prior sexually assaultive behavior in prosecutions for child sexual offenses, what factors must a trial court consider in determining whether the probative value of that prior sexually assaultive behavior is substantially outweighed by the danger of unfair prejudice, and, specifically, is the similarity or dissimilarity between the two offenses one of those factors?

2. As a matter of first impression, how should [the] trial [court] apply these factors, including the dissimilarity between the two offenses, in determining whether the probative value of the prior sexual assaultive behavior is substantially outweighed by the danger of unfair prejudice, as required by §10-923(e)(4)?

3. As a matter of first impression, if the trial court has determined that the probative value of the prior sexual assaultive behavior is not substantially outweighed by the danger of unfair prejudice, how much of the factual details including the dissimilarities between the past and present offense [may] be admitted at trial before the jury and what factors should be considered in making that determination?

4. Did the trial court abuse its discretion at Petitioner's trial for sexual abuse and rape of his minor grandson when it admitted evidence of Petitioner's ten

3

1.      Under CJP § 10-923(e)(4), must a circuit court consider certain specific factors in determining whether the probative value of a defendant's other sexually assaultive behavior substantially outweighs the danger of unfair prejudice?

2.      How should circuit courts weigh any identified factors when conducting an analysis under CJP § 10-923(e)(4)?

3.      Did the motions judge abuse his discretion when he determined that the probative value of Petitioner's 2010 conviction was not substantially outweighed by the danger of unfair prejudice?

4.      If the motions judge correctly determined that the probative value of Petitioner's prior conviction was not substantially outweighed by the danger of unfair prejudice, then was either the motions judge or the trial judge nevertheless required to *sua sponte* limit the scope of the evidence presented to only certain details of the prior conviction?

For the reasons discussed below, we hold that there is no factor that circuit courts *must* consider in every case when conducting an analysis under CJP § 10-923(e)(4), and we discuss an illustrative—but not exhaustive—list of appropriate factors that circuit courts *may* consider.  The motions judge in this case did not abuse his discretion when he determined that the probative value of Petitioner's 2010 conviction was not substantially outweighed by the danger of unfair prejudice.  Lastly, Petitioner waived any argument concerning whether the circuit court had a *sua sponte* duty to limit evidence admitted under CJP § 10-923 because he failed to raise any such argument during any of the circuit court proceedings.  Thus, for these reasons detailed below, we affirm the judgment of the Appellate Court.

---

year old sexual abusive behavior on an adult male which was substantially dissimilar from the child abuse for which he was on trial?

4

# I
# BACKGROUND

Before addressing the merits of this appeal, we provide an overview of some pertinent evidentiary principles, as well as the facts and procedural history of Petitioner's case.

## A. *Admissible Evidence Generally, Historical Exceptions For Prosecution Of Sexual Crimes, And CJP § 10-923*

To appreciate how CJP § 10-923 operates in context, we first discuss admissible evidence generally and our State's treatment of admissible evidence in the prosecution of sexual crimes.

### 1. Evidence Generally

Our rules make clear: relevant evidence is generally admissible; evidence that is not relevant is inadmissible.[10] Md. Rule 5-402. Two exceptions to Rule 5-402's general policy of admission of relevant evidence are Rule 5-404(b), which bars, absent an applicable exception, the introduction of "[e]vidence of other crimes, wrongs, or other acts . . . to prove the character of a person in order to show action in the conformity therewith[,]" otherwise known as "propensity evidence," and Rule 5-403, which excludes relevant

---

[10] "Relevant evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401.

evidence if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice.

The policy consideration underlying Rule 5-404(b) is to avoid tainting the jury into thinking that the defendant is a bad person "who should be punished regardless of his [or her] guilt of the charged crime, or to infer that he [or she] committed the charged crime due to a criminal disposition." *Thompson v. State*, 412 Md. 497, 503 (2010) (quoting *Acuna v. State*, 332 Md. 65, 75 (1993)). Despite that prohibition, such evidence historically has been admissible to prove things other than a defendant's general propensity to commit a crime, such as "proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, [or] absence of mistake or accident[.]"[11] Md. Rule 5-404(b); *see Merzbacher v. State*, 346 Md. 391, 407 (1997) (noting that Rule 5-404(b) "incorporates well recognized exceptions" to the general prohibition of propensity evidence).

We do not exclude relevant evidence merely because it is prejudicial, as "[a]ll evidence, by its nature, is prejudicial." *Williams v. State*, 457 Md. 551, 572 (2018). Rule 5-403 instead excludes relevant evidence when its *unfairly* prejudicial nature *substantially* outweighs its probative value. Under Rule 5-403, unfair prejudice outweighs a piece of relevant evidence's probative value if it "tends to have some adverse effect . . . beyond

---

[11] Rule 5-404(b) was amended on May 15, 2019 (effective July 1, 2019), to include as an additional exception evidence "in conformity with Rule 5-413." Rule 5-413, which was adopted on May 15, 2019, became effective on July 1, 2019, and is the counterpart to CJP § 10-923, authorizing the introduction of certain propensity evidence in compliance with that statute.

tending to prove the fact or issue that justified its admission." *Montague v. State*, 471 Md. 657, 674 (2020) (alteration in original) (quoting *State v. Heath*, 464 Md. 445, 464 (2019)).

By its plain language, CJP § 10-923 necessarily contemplates the introduction of some propensity evidence against a defendant. But the statute is not a radical departure from Rule 5-404(b)'s underlying policy. Indeed, this is not the first time we have treated propensity evidence differently in the prosecution of sexual offenses.[12]

## 2. Common law exception for the prosecution of sexual crimes

In 1989, this Court held that in Maryland, there exists a "'sexual propensity' exception to the rule excluding evidence of other crimes[.]" *Vogel v. State*, 315 Md. 458, 462 (1989). In reaching this holding, the Court noted that the exception "is strictly limited to the prosecution for sexual crimes in which the prior illicit sexual acts are similar to the offense for which the accused is being tried and involve the same victim." *Id.* at 466. The rule announced in *Vogel* was, therefore, a narrow common-law exception to the general exclusionary rule for propensity evidence. *See Thompson*, 412 Md. at 503–04 (acknowledging and discussing the rule established in *Vogel*).

Years later, we declined to extend *Vogel* to admit evidence of similar sexual acts committed against a person *other than* the victim in the current criminal proceeding. *See Hurst v. State*, 400 Md. 397, 415 (2007) ("[T]he State urges that . . . this Court should

---

[12] Likewise, such exceptions for prosecution of sexually based crimes have existed in the federal system for nearly three decades. *See* Violent Crime Control and Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796, 2136–37 (Sept. 13, 1994) (enacting Federal Rules of Evidence 413 and 414, which allow for the admission of some propensity evidence in the prosecution of federal sexual crimes).

extend its holding in *Vogel* . . . and allow evidence of a defendant's prior rapes and sexual assaults to show such a propensity beyond the limitations we expressed in *Vogel*. We decline to do so."). We clearly stated that if the scope of our rule in *Vogel* was to be expanded, then such a change would need to come from the General Assembly "or by this Court, sitting in its legislative capacity, exercising its authority to enact Rules of Practice and Procedure and Rules of Evidence[,]" *id.* at 418, "not by judicial fiat[,]" *id.* at 417. Since *Vogel*, this Court reiterated that the exception exists to prove what Rule 5-404(b) *generally* tries to prohibit: proving that a defendant has a "passion or propensity for illicit sexual relations with the particular person concerned in the crime at trial[.]" *Acuna*, 332 Md. at 75 (quoting *Vogel*, 315 Md. at 465).

### 3. CJP § 10-923

Fast forward to 2018. The General Assembly took to heart our words in *Hurst* and enacted CJP § 10-923. The statute codifies and expands the narrow exception announced in *Vogel*, as § 10-923's application is limited by neither the victim's identity nor, as we explain below, similarity of the act committed. Under that section, if the State tries a defendant for (1) a sexual crime under Title 3 of the Criminal Law Article ("CR"), (2) sexual abuse of a minor under CR § 3-602, or (3) sexual abuse of a vulnerable adult under CR § 3-604, evidence of the defendant's other sexually assaultive behavior may be admissible. CJP § 10-923(b). The statute defines "sexually assaultive behavior" as an act that would constitute one of the three crimes immediately noted above, as well as (4) a

8

violation of 18 U.S.C. Chapter 109A[13] or (5) a violation of the law of another state, the United States, or a foreign country that is the equivalent of an offense under items (1)–(4). *Id.* § 10-923(a). In other words, the statute does not require that the other sexually assaultive behavior yield a conviction. To introduce such evidence, the State must file a motion at least 90 days before trial, describing the evidence that it seeks to introduce. *Id.* § 10-923(c). The circuit court then must hold a hearing to determine the evidence's admissibility. *Id.* § 10-923(d).

After the hearing, the circuit court *may* admit the evidence *only if* it determines that the State can satisfy four criteria: (1) the evidence is offered either to (i) prove a lack of consent or (ii) rebut an express or implied allegation that a minor victim fabricated a sexual offense, (2) the defendant had the opportunity to confront and cross-examine the witness or witnesses testifying to the sexually assaultive behavior, (3) the sexually assaultive behavior was proven by clear and convincing evidence at the required hearing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* § 10-923(e).

As the plain language makes clear, before the circuit court can exercise discretion as to admissibility, it must ensure that the State has satisfied four criteria. *See id.*; *see also id.* § 10-923(b) ("[E]vidence of other sexually assaultive behavior by the defendant . . . *may be admissible, in accordance with this section*." (emphasis added)). Thus, if any one

---

[13] Chapter 109A of Title 18 of the United States Code encompasses various federal sexual crimes and other related provisions.

9

of the criteria in (e)(1)–(4) is not satisfied, then the circuit court has no discretion to exercise, and the evidence is inadmissible.

The fourth criterion, codified in subsection (e)(4), imports the same balancing test utilized in Rule 5-403, and determinations under that rule, if challenged, are always reviewed for an abuse of discretion. *See Dejarnette v. State*, 478 Md. 148, 175 (2022). Therefore, in analyzing whether the State has satisfied subsection (e)(4), the circuit court must determine—by exercising its discretion—whether the danger of unfair prejudice substantially outweighs the probative value of the evidence the State seeks to introduce.

But even if the State can satisfy all four criteria, the evidence is not yet necessarily admissible. Satisfaction of subsections (e)(1)–(4) are *conditions precedent* to the circuit court exercising discretion whether to admit the evidence; their satisfaction does not automatically trigger admissibility. *See* CJP § 10-923(e) (circuit court judges "*may* admit evidence . . . *if* the court finds" that the State has satisfied the four criteria (emphasis added)); *see also Uthus v. Valley Mill Camp, Inc.*, 472 Md. 378, 395 (2021) (noting that this Court has a "long history" of interpreting the statutory term "may" as a discretionary term and "shall" as a mandatory term). A plain reading of the statute, thus, shows that when the State seeks to admit evidence under § 10-923, the circuit court, assuming subsections (e)(1)–(3) are satisfied, will *always* exercise discretion at least once (in determining whether the State can satisfy subsection (e)(4)) and *potentially* twice (in determining whether to admit the evidence after it finds that the State has satisfied, if indeed

10

it has, subsections (e)(1)–(4)).[14] We will revisit this important distinction below. *See infra* Part III.B.

## B. Factual Background

The weather was rainy and stormy on Friday, September 13, 2019, and because Petitioner then was homeless, his daughter—A.H.'s mother ("Mother")—permitted Petitioner to stay the night at her home, as she had on prior occasions. At the time, Mother lived with her husband and her three children: A.H., who was ten years old, and A.H.'s two older sisters. Mother's bedroom was on the first floor while the children's bedrooms were on the second floor; A.H. had his own room, and A.H.'s sisters shared a room. Petitioner and Mother agreed that he would sleep on the couch on the first floor.[15]

The following recitation of events comes from A.H.'s trial testimony. Sometime that evening or early Saturday morning, Petitioner went upstairs to A.H.'s room where A.H. was playing video games. Petitioner sat down on an air mattress on the floor before

---

[14] That is not to say that the circuit court does not exercise its discretion when determining whether the State has satisfied the other criteria in (e)(1)–(3). At the very least, subsection (e)(3)—determining whether the State has proved by clear and convincing evidence a defendant's involvement in the other sexually assaultive behavior—also involves, to a degree, the exercise of discretion. *See Faulkner v. State*, 314 Md. 630, 635 (1989) ("[T]he [second] step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence. We will review this decision to determine whether the evidence was sufficient to support the trial judge's finding." (citations omitted)).

[15] Although several witnesses testified that Petitioner was supposed to sleep on the couch downstairs, A.H. testified that Petitioner sometimes would sleep on the couch downstairs and sometimes would sleep on an air mattress on the floor in A.H.'s bedroom. A.H. also testified that, on the night in question, there was an air mattress on the floor in his bedroom.

11

he and A.H. began play fighting, which was not an uncommon activity when Petitioner would stay the night. A.H. was dressed in only his underwear. Petitioner eventually began touching A.H.'s genitals over A.H.'s underwear. A.H. stopped playing with Petitioner, who then pulled down A.H.'s underwear and performed fellatio on A.H. while holding down A.H. by the arm. Petitioner also put two–three fingers "on [A.H.'s] butt" and in his "butt crack," but Petitioner did not touch A.H.'s anus. Petitioner also licked A.H.'s "butt crack." During the entire assault, Petitioner had one hand over A.H.'s mouth and ceased holding down A.H. by the arm only when Petitioner placed his fingers on A.H.'s buttocks. Petitioner's hand covering A.H.'s mouth prevented A.H. from calling out to Mother for help.

Petitioner returned to the air mattress, and A.H. immediately left his room and woke up his eldest sister, who let A.H. sleep in their other sister's bed, as that sister was not home that evening. The two did not discuss what happened, but A.H.'s sister testified that A.H. looked frightened. A.H. heard crying and then a door shut. A.H. presumably heard Petitioner leave Mother's house because Petitioner's other daughter ("Aunt") eventually saw Petitioner outside (undetermined where) and brought him back to her house.[16]

Petitioner called Mother Saturday morning, crying and claiming that A.H. was trying to get him "locked up[.]" Petitioner turned the tables and accused A.H. of sexually assaulting him. Mother immediately hung up the phone. She asked A.H. if anything happened between him and Petitioner, but A.H. would not say, so Mother elicited Aunt's

---

[16] The record does not reflect that, at this point, Aunt was aware of the assault that had just taken place.

12

help to encourage A.H. to share the details of what occurred the prior night. A.H. eventually disclosed to Aunt that Petitioner sexually assaulted him. Aunt called Mother and the police and brought A.H. to the hospital where officials performed a rape kit. There was no forensic evidence corroborating Petitioner's assault on A.H.

A few days later, Licensed Clinical Social Worker Mollie Kotis, of the Child Advocacy Center, interviewed A.H., who confirmed that Petitioner sexually assaulted him.[17] Detective Sergeant Tom Funk of the Wicomico County Sheriff's Office was assigned as the lead detective and observed Ms. Kotis' interview with A.H.

After that interview, a different detective located Petitioner, who agreed to speak with Det. Sgt. Funk at the station. During the interview, Petitioner proffered a different series of events: he admitted going to Mother's house the night of the incident, but he disclaimed ever going inside. Instead, he maintained that he was there strictly to pick up a bus ticket, which one of his granddaughters hand-delivered to him. He denied seeing or having any contact with his grandchildren in several years. Petitioner eventually was arrested and charged with child sexual abuse and other sexual offenses.

---

[17] A.H.'s trial testimony slightly varies from his recollection of events during Ms. Kotis' interview. During the interview, for example, he made the following assertions that differed from his trial testimony:
- When Petitioner arrived at A.H.'s room, A.H. was asleep and awoken by Petitioner.
- Petitioner digitally penetrated A.H.
- Upon entering his sisters' room, A.H. woke both his sisters and told them that Petitioner assaulted him, and A.H.'s sisters responded by stating that they wanted to kill Petitioner.
- A.H. told his mother about the assault after Petitioner left.

*C.*     *Procedural Background*

**1. Circuit court proceedings**

Before trial, the State timely sought to introduce under CJP § 10-923 evidence of Petitioner's 2010 conviction, by way of a guilty plea, for a third-degree sexual offense. As the basis for that conviction, Petitioner previously admitted that he inserted both a broomstick and a vacuum hose (not simultaneously) into an unconscious male adult's rectum and photographed the victim while those foreign objects were inside the victim.

At the required hearing under § 10-923(d), the State indicated that both the victim of and eyewitness[18] to Petitioner's 2010 criminal conduct were deceased. Thus, the State intended to introduce a copy of the 2010 guilty plea transcript, which the State provided to Petitioner in advance of the hearing. Petitioner argued that the State could prove only the third requirement under CJP § 10-923(e): that his other sexually assaultive behavior (as a prior conviction) was proven by at least clear and convincing evidence. While Petitioner argued that the State could not satisfy the first two elements—a permissible purpose for the evidence and Petitioner's prior opportunity to cross examine any witnesses testifying to the other sexually assaultive behavior—the focus of this appeal is on Petitioner's contention that the State failed to satisfy the fourth criterion: whether the danger of unfair

---

[18]At the hearing, the State characterized this individual as the "witness" to Petitioner's prior sexually assaultive behavior. During Petitioner's 2010 guilty plea for that conduct, however, it was clear that no individual actually witnessed Petitioner sexually assaulting the now-deceased victim. Rather, Petitioner showed the photos documenting his sexual assault of the victim to a third party and told that third party that he (Petitioner) was the one who both perpetrated the depicted assault and took the photographs.

14

prejudice in admitting any evidence of the 2010 conviction substantially outweighed that evidence's probative value.

As to that issue, Petitioner argued at the hearing that presenting such evidence to a jury would be "substantially more prejudicial than [it would be] probative[.]" In his view, the two crimes were not similar enough to be admissible: first, this case concerned a minor victim, and the prior sexual offense was against an adult victim; and second, the prior case involved insertion of foreign objects while this case contained no "weapon[.]" The State argued that Petitioner's emphasis on dissimilarities between the two acts was misplaced. Preliminarily, the State argued that the plain language of CJP § 10-923 does not require that the two instances of sexually assaultive behavior be similar or in any way connected. Second, even if the court were looking for similarities between the two instances, the State noted that both victims are male, penetration occurred against both victims,[19] and that consent was at issue.

> The motions judge likewise gleaned an underlying issue of consent in each case:
>
> [THE COURT]: I mean, in the adult case, the . . . victim is not awake or is not able to give consent. The defendant sexually assaults the person.
>
> In this case, it's going upstairs into a bedroom where you have a minor victim who is, you know, not able to give consent, is either awake or asleep and woken up. I mean, does it matter adult versus minor[?]

---

[19] When the State asserted that both cases involved anal penetration, Petitioner's trial counsel did not contest that characterization. In his brief before this Court, Petitioner argues that the prosecution "erroneously claim[ed] that both cases involved anal/rectal penetration when there was *no evidence* of such penetration presented by the evidence." (Emphasis added). That claim, however, is based on the evidence presented at the trial that had not yet occurred at the time of the hearing. At the hearing, the parties were focused on A.H.'s statements during his interview with Ms. Kotis, which did allege digital penetration. Petitioner's counsel acknowledged that during oral arguments.

*    *    *

[T]he conduct is still sort of sexually assaultive behavior against someone that either didn't or can't give consent.

The motions judge ruled that the State had satisfied all criteria under § 10-923(e). As to subsection (e)(4), he noted that the issue is not whether any prejudice would ensue from admitting evidence of Petitioner's conviction, but whether the probative value of admitting that evidence would be outweighed by *unfair* prejudice. The motions judge believed that "the nature of [the prior] offense . . . is consistent enough with the offense here, and that the probative value is not substantially outweighed by the danger of unfair prejudice." He then subsequently ruled that evidence of Petitioner's 2010 conviction was admissible.

Petitioner filed a motion to reconsider, asking the motions judge to revisit his prior ruling under CJP § 10-923 and, to the extent that he was unwilling to change his ruling, "clarify what evidence from the earlier proceeding may be admitted[.]" The court did not rule on that motion via a written order, so Petitioner orally renewed it at an October 2020 pre-trial conference before the motions judge.[20] Petitioner reargued only that the State could not satisfy the confrontation requirement under CJP § 10-923(e)(2). The State disclosed that it had located the law enforcement official who previously investigated Petitioner's 2010 conviction and that it would use that detective's testimony to bring in the

---

[20] At the pre-trial conference, Petitioner's counsel stated why he believed "the Court's construction [of 10-923 was] . . . problematic." The motions judge asked if counsel was referencing the "motion to reconsider that was filed on August the 24th[.]" Counsel confirmed that he was.

16

previously provided plea transcript. Petitioner then asked the motions judge for guidance on its original ruling: "[W]hat specifically [would] be admitted as opposed to just saying information from the case can be admitted[?]" The State confirmed that it would seek to elicit testimony from the 2010 detective—confined to the information within the four corners of the plea transcript—and introduce the plea transcript previously provided to Petitioner "at the [motions] hearing[,]" as well as a true test copy of Petitioner's conviction.

At that point, the motions judge asked Petitioner's trial counsel if he had anything further to add, to which he replied, "No. It at least clarifies for me what it is the State's seeking. I'll [re-object] at the appropriate time[.]" The motions judge then denied the motion to reconsider.

At trial, the State's final witness was Corporal Steven Creason of the Queen Anne's County Office of the Sheriff. Cpl. Creason previously worked for the Ridgely Police Department in Caroline County and was assigned to investigate the circumstances of what came to be Petitioner's 2010 conviction. Petitioner objected to the State's direct examination of Cpl. Creason, at which point a bench conference ensued. The State informed the trial judge of the purpose of Cpl. Creason's testimony and that the motions judge previously decided this issue. The State confirmed that it was limiting Cpl. Creason's testimony to the contents of the 2010 plea transcript. Petitioner raised only a confrontation issue to the trial judge:

> [N]either [Petitioner] nor I have ever had an opportunity to cross-examine the individual who is the alleged victim in this case. It never happened before. It didn't happen here. The alleged victim in that case is deceased. So just advising the Court I'm going to have to just keep saying I object a lot.

17

The trial judge overruled that initial objection and the other ensuing objections throughout the State's direct examination of Cpl. Creason. The trial judge also overruled Petitioner's objections to the admission of the 2010 plea transcript and the true test copy of his conviction. That same day, the jury convicted Petitioner of sexual abuse of a minor and related sexual offenses; he timely noted his appeal.

## 2. The Appellate Court of Maryland

Petitioner asked the Appellate Court one question: did the trial court abuse its discretion in admitting evidence of Petitioner's prior conviction under CJP § 10-923? The Appellate Court, however, bifurcated and rephrased Petitioner's question to ask: whether (1) his 2010 conviction was sufficiently similar to the charged offense so as to allow its admission and (2) the evidence used to prove the 2010 conviction was too salacious to be admitted. The intermediate court found it "necessary to treat the admiss[ibility] . . . of [Petitioner's] 2010 conviction separately from the admiss[ibility]of the allegedly 'salacious' detail[.]" *Woodlin v. State*, 254 Md. App. 691, 702 n.8 (2022).

As a legal matter, the court determined that it must "first determine what role the similarity or dissimilarity between the offenses plays . . . . Only then, as a factual matter, [could it] determine whether the probative value . . . of [Petitioner's] 2010 conviction was substantially outweighed by the danger of unfair prejudice." *Id.* at 702–03. The court noted that a similarity analysis is a relevant question to admissibility, *id.* at 704, but did not clearly answer whether consideration of similarity is *required*. The court refused to "engraft[] onto this balancing test a requirement that courts consider a set list of factors, as

18

[Petitioner] urges[,]" *id.* at 704 n.10, but nevertheless simultaneously stated that courts "*must* consider whether and how similar the two instances of sexually assaultive behavior actually are[,]" *id.* at 704 (emphasis added), and that "the question of similarity is *necessarily* a part of the balancing between probative value and unfairly prejudicial effect[,]" *id.* at 705 (emphasis added).

The Appellate Court ultimately held that the motions judge did not abuse his discretion in weighing the similarity and dissimilarity and admitting the evidence. *Id.* at 705. The motions judge, it recognized, focused on lack of consent, an issue that, in the Appellate Court's view, contained evidence on both sides. The motions judge's decision to admit the evidence, therefore, clearly was not an abuse of discretion. *Id.* at 705–06.

For the "salaciousness" component of the inquiry, the court framed Petitioner's argument as follows: "[E]ven if . . . [Petitioner's] prior conviction is admissible, [did] the trial court nevertheless abuse[] its discretion by admitting 'the inflammatory and dissimilar parts of that conviction which were not at all relevant to [the allegation] but were sure to rouse the jury's hostility[?]'"[21] *Id.* at 706 (second-to-last alteration in original). While it still addressed the merits, the Appellate Court held that Petitioner waived this argument because he was provided the entire plea transcript on at least three separate occasions and

---

[21] The court noted that the transcript contained "four pages of *potentially* prejudicial details about the 2010 assault[.]" *Woodlin*, 254 Md. App. at 707 (emphasis added). These facts included details of the victim's trauma and statements from Petitioner, the victim, and a witness. *Id.* at 707–08.

19

never argued to the motions judge or trial judge his concern with the unredacted transcript.[22]  *Id.* at 708–12.

## II
## STANDARD OF REVIEW

The General Assembly imported the same balancing test found in Maryland Rule 5-403 (probative value versus unfair prejudice) into CJP § 10-923(e)(4).  When a trial court's determination under Rule 5-403 undergoes appellate scrutiny, this Court has stated that such determinations are "discretionary," and, therefore, are reviewed for abuse of discretion.  *Dejarnette*, 478 Md. at 175.  Under the abuse-of-discretion standard, we must refrain from reversing a lower court "simply because th[is] . . . [C]ourt would not have made the same ruling."  *State v. Matthews*, 479 Md. 278, 305 (2022) (second alteration in original) (quoting *Devincentz v. State*, 460 Md. 518, 550 (2018)).  "Rather, the trial court's decision must be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."  *Id.* (quoting *Devincentz*, 460 Md. at 550).  In other words, an abuse of discretion occurs when "no reasonable person would take the view adopted by the circuit court."  *Williams*, 457 Md.

---

[22] Even if Petitioner had preserved this argument, the intermediate court still would have held that the circuit court did not abuse its discretion.  It would be insufficient, it believed, simply to inform the jury that Petitioner had been convicted of a prior sexual crime; rather, the circuit court was within its discretion to present to the jury all the details surrounding Petitioner's prior conviction, allowing the jury to determine for itself how similar or dissimilar the two acts were and what—if any—probative value to assign the past conviction.  *Id.* at 712–13.  The court was careful not to assign this task solely to either the motions judge or trial judge, noting that a motions judge could give guidance as to what could be admitted, subject to "refinement at trial by the trial judge when confronted by the actual evidence."  *Id.* at 713 n.16.

at 563 (citing *Fuentes v. State*, 454 Md. 296, 325 (2017) and *Alexis v. State*, 437 Md. 457, 478 (2014)).

## III
## ANALYSIS

This is the first time we have been asked to interpret CJP § 10-923. We first explain, utilizing our canons of statutory interpretation, why § 10-923(e)(4) does not require circuit courts to consider any specific factor in balancing probative value against the danger of unfair prejudice. Next, we address appropriate factors that circuit courts *may* consider in assessing probative value and unfair prejudice under subsection (e)(4) and in determining admissibility generally under § 10-923(e) as a whole (that is, after a circuit court determines that (e)(1)–(4) have been satisfied). We then discuss why the motions judge in this case did not abuse his discretion when he determined that the danger of unfair prejudice in admitting evidence of Petitioner's 2010 conviction did not substantially outweigh the evidence's probative value. Lastly, we briefly address how Petitioner waived any argument concerning whether the circuit court erred by failing to *sua sponte* limit the scope of the State's evidence. We address the parties' various arguments along the way.

**A.    CJP § 10-923(e)(4) Does Not Require Circuit Courts To Consider Any Particular Factor**

Petitioner concedes that § 10-923 is "silent on what factors a trial court is to consider in balancing [a piece of relevant evidence's] probative value against its potential for unfair prejudice." He admits further that a prior draft bill of the statute contained four factors that trial courts would have been required to assess, but that the General Assembly otherwise decided not to specify any factor and adopted the statute in its current form. These four

21

factors were (1) whether the evidence offered is in dispute, (2) the similarity between the two offenses, (3) the closeness in time between the two offenses, and (4) the independence of the two offenses. *See Woodlin*, 254 Md. App. at 704 n.10. That the General Assembly chose not to specify any of these factors, he argues, does not preclude the circuit court from considering them. He goes one step further, though, arguing that "a proper assessment" of probative value against the danger of unfair prejudice "*requires* consideration of these factors." (Emphasis added). Petitioner primarily relies on *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), and advocates that we, like the United States Court of Appeals for the Ninth Circuit, should require our circuit courts to consider certain factors when performing the required balancing under subsection (e)(4). In his view, the "list set out in *LeMay* has wide acceptance. It gives wide guidance to trial courts. It mirrors most factors considered relevant by the [General Assembly], and it allows the trial court to consider other factors not specifically listed when they are relevant to the particular case."

The State agrees that the General Assembly's decision not to enumerate a list of criteria does not *preclude* circuit courts from considering Petitioner's proposed factors but urges us to reject his plea that circuit courts *must* consider these factors. Instead, the State argues that this "task will be better served by the identification of illustrative factors, than by mandating a rigid test akin to the one that the [General Assembly] consciously rejected."

We agree with the State. Whether circuit courts must consider in every case certain factors when balancing probative value against unfair prejudice under CJP § 10-923(e)(4) requires us to interpret the language of the statute, so we turn to the tools of statutory interpretation that guide our analysis:

22

> Our goal is to ascertain and effectuate the intention of the legislature and we begin that exercise by reviewing the statutory language itself. We read the plain meaning of the language of the statute as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. Additionally, *we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute*, and we do not construe a statute with forced or subtle interpretations that limit or extend its application. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resorting to other rules of construction.

*Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 379–80 (2022) (emphasis added) (citations and quotation marks omitted). Keeping these provisions in mind, we have little doubt that the General Assembly intended to give circuit courts wide discretion and took steps not to limit the individuals in the best position to weigh probative value against the potential dangers of unfair prejudice.

We start, as always, with the plain text. The unambiguous language shows that the only mandates the General Assembly placed on circuit courts under § 10-923 were to hold a hearing on the State's motion, *see* CJP § 10-923(d), and to require that the State satisfy certain criteria before the circuit court could exercise its discretion as to admissibility, *see id.* § 10-923(e) (permitting discretion to admit evidence only "if the court finds" satisfaction of (e)(1)–(4)). Thus, the General Assembly expressly imposed mandatory requirements on the circuit courts in this context when it wanted to do so. That it did not do so in subsection (e)(4), therefore, is persuasive evidence that it did not intend to so constrain the circuit courts. CJP § 10-923 enumerates no specific factor or factors to consider under subsection (e)(4), but Petitioner argues that we should nonetheless adopt a specific set of factors that courts must consider in every case. Consistent with the discretion

23

we have long afforded trial courts in making determinations under Rule 5-403, we decline that invitation.

Nor are we persuaded by Petitioner's suggestion to follow the Ninth Circuit's approach in *LeMay*. In affirming a district court's balancing under Federal Rule of Evidence ("FRE") 414 to admit evidence of LeMay's prior sexually assaultive behavior, the Ninth Circuit stated that there are "several factors that district judges *must* evaluate" in determining whether to admit such evidence. 260 F.3d at 1027 (emphasis added). Those factors are (1) similarity, (2) closeness in time, (3) frequency of the acts, (4) presence or lack of intervening circumstances, and (5) necessity of the evidence beyond testimonies already offered at trial. *Id.* at 1028. *LeMay* itself was not, however, where the Ninth Circuit adopted these mandatory factors. Rather, it previously adopted them in *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000). Thus, we turn to that case.

In *Glanzer*, which involved the application of FRE 415 (the civil counterpart to FREs 413 and 414), the Ninth Circuit noted that federal courts had coalesced around a three-step inquiry to determine whether FRE 415 applied to evidence that a party seeks to introduce at trial. *Glanzer*, 232 F.3d at 1268. The third step of that inquiry requires the evidence to be relevant, and the Ninth Circuit recognized that if a defendant truly has a propensity to commit the offense alleged, then evidence of the defendant previously engaging in that specific act is relevant and conforms to the principles established in FREs 413 and 414. *Id.* The Court then announced and adopted the five factors it later noted in *LeMay* that district courts *must* assess when balancing evidence pursuant to FREs 413, 414, and 415. *Id.* at 1268–69. In adopting these mandatory factors, the court primarily relied

24

upon the United States Court of Appeals for the Tenth Circuit's opinion in *United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998).

But *Glanzer* misinterpreted *Guardia*, which did not purport to adopt a strict set of factors that district courts must consider. Instead, the Tenth Circuit stated that "[p]ropensity evidence, however, has indisputable probative value. That value in a given case will depend on *innumerable considerations, including*" the five factors indicated above. *Guardia*, 135 F.3d at 1331 (emphasis added). Thus, the Tenth Circuit recognized— much as we do—that there is an array of factors that trial courts can consider when balancing probative value against the danger of unfair prejudice and—like we do below— merely provided a non-exhaustive list of factors as guidance. Other federal courts have questioned the strength of *LeMay*'s reasoning and the requirement that district courts within the Ninth Circuit must consider special factors in determining whether to admit evidence under FREs 413, 414, and 415. *See United States v. Hawpetoss*, 478 F.3d 820, 825 (7th Cir. 2007) (recognizing that *Guardia* did not purport to adopt a rigid test, *LeMay* read too much into *Guardia*, and that the Seventh Circuit is more flexible than *LeMay* and more aligned to *Guardia*'s approach); *see also Martinez v. Cui*, 608 F.3d 54, 60 (1st Cir. 2010) (rejecting any sort of "special rules constraining district courts' usual exercise of discretion under FRE 403 when considering evidence under Rule 415," including those announced in *LeMay*).

We decline to adopt *LeMay*'s approach and instead conclude that our circuit courts will be better served by affording them under CJP § 10-923(e)(4) the very same latitude and discretion they have in making similar determinations under Maryland Rule 5-403's

25

balancing test. To the extent that the Appellate Court's opinion could be interpreted to hold that similarity is a factor that circuit courts must consider in every case, we disagree and reject that part of its holding. *See Woodlin*, 254 Md. App. at 704 (stating that circuit courts "must consider whether and how similar the two instances of sexually assaultive behavior are"). Our holding comports with the plain language of the statute—which mentions no factor that circuit courts must consider—and our general approach to the exercise of discretion under Rule 5-403.

**B.** ***Appropriate Factors To Consider Under CJP § 10-923(e)(4) And How To Weigh Those Factors***

Having determined that circuit courts are not required to assess any particular factor in every case, we next discuss which factors a circuit court properly may assess. On this issue, there is much common ground between the parties. There is no factor identified by either party that the other believes is an inappropriate factor to consider in at least some cases. Among all the factors identified, we agree that most would be appropriate to consider at some point in the analysis required under § 10-923(e). As we will explain, however, some of those factors are more appropriately considered when a circuit court balances probative value against the dangers of unfair prejudice under § 10-923(e)(4); while others are more appropriately considered in the final determination of whether or not to exercise discretion to admit the evidence (i.e., after the circuit court determines that § 10-923(e)(1)–(4) have been satisfied). Before we discuss each factor, we make two points.

*First*, it generally is incumbent upon the parties to argue any factor they deem relevant or applicable. A precondition to arguing on appeal that a factor was not properly

26

weighed or considered is that the party brought that particular factor to the circuit court's attention. *See DeLeon v. State*, 407 Md. 16, 29–30 (2008) (noting that defendant waived in this Court evidentiary arguments on bases of relevancy and unfair prejudice where the record reflected that he raised at trial only an objection on grounds of improper foundation); Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]").

*Second*, because the list we provide today is illustrative—not exhaustive—the State and future defendants are, of course, free to argue for other factors not specified in this opinion. If the trial court believes that a factor not enumerated here is one that should be considered in a particular case, then it should weigh it along with all other pertinent factors, either before making a decision under subsection (e)(4) or as to admissibility generally, depending on the nature of the factor.

With those points in mind, we now move to the factors identified by the parties, which we divide into three categories: those used for assessing probative value under subsection (e)(4), those used for assessing unfair prejudice under subsection (e)(4), and those that are better suited to the ultimate discretionary issue of admissibility after satisfaction of subsection (e)(1)–(4).

## 1. Factors concerning probative value under CJP § 10-923(e)(4)

### i. similarity or dissimilarity of the acts

While we do not hold that circuit courts *must* consider the similarity between the two instances of sexually assaultive behavior in every case, we nevertheless agree with the parties that it is an appropriate factor a circuit court *may* consider. The State argues that a

"defendant's other sexually assaultive conduct need only have 'some threshold similarity to the crime charged[,]'" and that we should focus on the similarities over the differences. Petitioner asserts that the purpose of CJP § 10-923, at least as relevant to this case, is to bolster the credibility of A.H.; thus, evidence of "*dissimilar* activities with a *dissimilar* individual in no way serves this same purpose and does not make [A.H.'s] testimony any more credible or believable."

We think the two are inextricably intertwined. Any *similarity* analysis necessarily involves an assessment of both similarities and differences. Counting similarities while ignoring differences, or vice versa, would result in an incomplete analysis. As the Appellate Court rightly noted, as the similarity between the two acts increases, so too does the evidence's probative value. *Woodlin*, 254 Md. App. at 704. As similarity decreases (i.e., as *dissimilarity increases*), the more likely it is that the evidence's probative value will be outweighed by the danger of unfair prejudice. *Id.*

Once a party raises as an applicable factor the similarity or dissimilarity of the acts, then circuit courts generally should assess at least two categories: (1) the characteristics of the victim and (2) the nature of the defendant's conduct. To the former, the analysis includes the victim's age, biological sex, gender identity, and status (mental state, physical prowess, capabilities, etc.); as to the defendant's conduct, the assessment includes both the method of perpetrating the sexual offense (use of violence/weapons, use of drugs to incapacitate, abuse of a position of trust, etc.) and the sexual offense itself (the specific acts committed, the location of the assault, etc.). *See United States v. Weber*, 987 F.3d 789, 793 (8th Cir. 2021) (upholding use of evidence under FRE 413 and 414 where defendant

28

sexually assaulted other children by abusing his role as a pediatrician); *LeMay*, 260 F.3d at 1029 (noting that the propensity evidence was very similar to the crime charged: each involved forced oral sex against the defendant's younger relatives while the defendant was babysitting those relatives); *State v. Devon D.*, 138 A.3d 849, 856–57 (Conn. 2016) (holding that evidence of defendant's sexual abuse of his three biological children would have been cross-admissible despite refusal to sever the charges because the assaults (forcing children to watch pornography and helping them bathe as a guise for digital penetration) involved prepubescent children and were perpetrated when the defendant had unsupervised visitation with the children at one of two locations, and because defendant instructed each child not to disclose the assault); *State v. Ring*, 424 P.3d 845, 853 (Utah 2018) (holding that defendant's prior act evidence was highly probative due to age of the victim, setting, and opportunity, and that the passage of time, alone, was not enough to outweigh the evidence's probative value); *State v. Davison*, 636 S.W.3d 588, 594 (Mo. Ct. App. 2021) (noting that defendant's prior sexual acts were "quite similar" to the crime charged in that they both involved four-year-old females whom the defendant had taken into a bedroom and forced to perform oral sex on him and that the trial court did not abuse its discretion in admitting that evidence); *Schuler v. Comm'r of Correc.*, 238 A.3d 835, 845 (Conn. App. Ct. 2020) (holding that defendant's prior sexually assaultive behavior was probative of crime charged because it involved the same victim and, on both occasions, the victim was intoxicated prior to going to sleep and awoke to the defendant assaulting her); *State v. Modes*, 475 P.3d 153, 160–61 (Utah Ct. App. 2020) (holding that evidence of defendant's other sexually assaultive behavior was "highly probative" where the victim's

29

age, setting of the offense charged, opportunity, and defendant's modus operandi all were similar).

### ii. temporal proximity and intervening circumstances

The parties agree that the closer in time between the other sexually assaultive behavior and the crime charged, the more probative it becomes to proving the crime charged. We agree with that commonsense approach. *See State v. Rainey*, 175 A.3d 1169, 1182 (R.I. 2018) (stating that "nonremote similar sexual offenses" against a third party by a defendant are admissible in a current trial against that defendant); *State v. Summers*, 629 S.E.2d 902, 906 (N.C. 2006) (noting that similarity of the acts committed and temporal proximity "govern" in the admission of a defendant's other sexually assaultive behavior); *cf. State v. Winter*, 648 A.2d 624, 629 (Vt. 1994) ("[T]emporal proximity is a prerequisite in plan or scheme cases."). The State posits that it is appropriate to consider intervening circumstances between the crime charged and a defendant's other sexually assaultive behavior. It relies on *State v. Williams*, which stated:

> The conduct underlying Williams's prior conviction occurred in 1996, and the acts with which he was charged in the present case began in 2008. However, Williams was incarcerated for much of this period. The acts charged began within five years of Williams's release from prison. This is adequate to give the prior conviction probative value.

548 S.W.3d 275, 289 n.14 (Mo. 2018). Petitioner agrees with *Williams*, noting that "incarceration [can] . . . explain[] the lack of any temporal proximity to the charged sexual offense by establishing that the accused was incarcerated at that time." He also implicitly endorses the "intervening circumstances" factor by advocating for the *LeMay* factors.

30

We also believe that when intervening circumstances give context to the temporal proximity between events, courts may consider them in assessing this factor. For example, a circuit court reasonably could conclude that a period of incarceration intervening between a prior incident of other sexually assaultive behavior and the crime at issue should be excluded when considering the probative value of the gap in time between the events. *See, e.g.*, *id.* We agree that any intervening circumstance (not just incarceration) may be an appropriate factor to consider.

### iii. frequency of sexually assaultive behavior

This factor is rather straightforward to apply: the more frequent the defendant's other sexually assaultive behavior, the more probative it becomes of the crime charged. The parties agree with this assessment, and we see no reason to exclude this factor from consideration. *See, e.g.*, *United States v. Seymour*, 468 F.3d 378, 382 (6th Cir. 2006) (approving two sexual assault witnesses' testimony under FRE 414 because the district court concluded that the assaults occurred close enough in time to the crime charged "and with enough frequency to be sufficiently probative"); *People v. Trujillo Garcia*, 89 Cal. App. 4th 1321, 1332 (2001) (noting that the value of uncharged sexual misconduct will depend on various factors including frequency, similarity, and temporal proximity to the charged offense).

### 2. Factors concerning unfair prejudice under CJP § 10-923(e)(4)

#### i. overshadowing of the crime charged

According to Petitioner, in assessing whether unfair prejudice exists, courts should weigh "the inflammatory character of the evidence against the utility the evidence will

31

provide to the jurors' evaluations of the case."  The State concedes that this factor weighs in favor of admission when the sexually assaultive behavior is "comparable to, or less than, that of the charged conduct[.]"

Again, common sense dictates that this is an appropriate factor for circuit courts to consider.  If juries were allowed to consider heinous acts that completely overshadow the crime charged, then we run the risk that juries predominantly will focus on the other sexually assaultive behavior and not the present charge.  *See Davison*, 636 S.W.3d at 594 (recognizing overshadowing as one of many factors in a propensity-evidence analysis); *State v. Meeks*, 34 N.E.3d 382, 398 (Ohio Ct. App. 2015) (noting that juries are more likely to convict based on propensity grounds when the other crimes/bad acts evidence is more inflammatory than the crime charged).

### ii. the jury's knowledge that a defendant previously was punished

The State argues that the jury's knowledge of a conviction (as opposed to just mere allegations) can be beneficial to a defendant.  As the State sees it, when a jury "knows the defendant was convicted for the past criminal acts," it will be less likely to "infer (or, worse, speculate) [that] the defendant escaped punishment in the past [and] be inclined to convict merely to punish the defendant for past criminal acts[.]"  Petitioner argues that while informing a jury of a defendant's past conviction can *decrease* the risk that the jury will convict the defendant of the currently charged crime on improper grounds, such knowledge does not *eliminate* the risk.[23]

---

[23] Petitioner further contends that informing juries about a defendant's prior conviction—absent any information about the actual sentence received—does more harm

We agree this may be an appropriate factor a circuit court may consider. If a jury is not given the opportunity to speculate whether the other sexually assaultive behavior resulted in a conviction, then it is less likely to be swayed by the notion that the defendant previously escaped punishment. *See United States v. Lau*, 828 F.2d 871, 874 (1st Cir. 1987) (weighing probative value of prior bad act evidence against the prejudicial risk that a jury would convict a defendant as punishment for past conduct); *Williams*, 548 S.W.2d at 290 (noting that a factor bearing on the prejudicial nature of propensity evidence is "whether the jury knows or can fairly infer [that] the defendant was punished for his [or her] past criminal acts"); *Rodriguez v. State*, 245 P.3d 818, 826–27 (Wyo. 2010) (holding that trial court provided a well-reasoned analysis for admitting prior convictions where it stated, among other things, that "the previous acts resulted in convictions, so a jury should not be tempted to punish [Mr.] Rodriguez for having 'escaped' penalty in the past" (alteration in original)).

All that is not to say that the State's attempt to use evidence that *did not* result in conviction (i.e., uncharged or unproven allegations) automatically is a factor that weighs in favor of excluding evidence of the other sexually assaultive behavior. We note only that the State, in informing the jury that the defendant's prior conduct resulted in a conviction,

---

than good. He believes this occurred in his case because the plea transcript contained no information about his sentence, which allowed the jury to unduly speculate. This argument makes too much of too little. If Petitioner believed he was disadvantaged by the jury not being informed of the sentence he received, then he could have asked that it be so informed. We nevertheless offer no view concerning how a trial court should exercise its discretion when considering how much information the jury should be permitted to hear about a defendant's other sexually assaultive behavior, which must be assessed on the facts of each case.

33

can lessen the fear that the jury will convict simply because the jury believes the defendant escaped punishment for the other sexually assaultive behavior.

### 3. Factors concerning admissibility generally after the State has satisfied CJP § 10-923(e)(1)–(4)

#### i. need

The parties both address "need" as a factor under § 10-923(e)(4). Petitioner acknowledges that it is a relevant factor for courts to consider by advocating for the *LeMay* factors, but he does not discuss it further. The State, also citing *LeMay*, argues that evidence of a defendant's other sexually assaultive behavior need only be practically necessary to the State's case to warrant admission. This factor weighs in favor of admission, the State believes, when the victim's testimony in the current case is the primary or only evidence of the underlying charge and the defendant challenges the victim's credibility.

We agree that the State's need for this evidence is something a circuit court can consider, but it is a consideration for the court's discretion regarding admissibility generally—not the balancing specifically performed under § 10-923(e)(4). In other words, the State's need for the evidence is not considered until the court has first concluded, in its consideration of § 10-923(e)(4), that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Furthermore, the State's need for evidence of a defendant's other sexually assaultive behavior as part of its case-in-chief is a factor, like many others addressed herein, that can cut both ways—for or against the State. As the State lacks other evidence to carry its burden at trial, the probative value of the other

34

sexually assaultive behavior increases, as does the State's need for such evidence.[24]  In the

same vein, the risk that a jury will use such evidence for an improper propensity purpose

also increases.  Conversely, where the circuit court reasonably could conclude that the State

has other viable means of proving the currently charged crime, the "need" factor may cut

against the State and in favor of exclusion.  We recognize that this is a rather difficult factor

to balance, but one that circuit courts diligently must consider—from both sides—before

making an ultimate determination whether this factor weighs in favor of inclusion or

exclusion.

### ii. clarity and manner

The State addresses two more factors: the *clarity* with which it can prove the other

sexually assaultive behavior and the *manner* in which it seeks to prove the other sexually

assaultive behavior.  As the State sees the clarity component, conduct that has "resulted in

a conviction [is] more probative than uncharged allegations of such conduct."  Regarding

manner, it argues that when the evidence is "limited to a few instances that can be presented

without requiring a 'mini trial,'" this factor weighs in favor of admission.

The State's argument as to clarity already is encapsulated by the requirement that

the State prove by clear and convincing evidence the defendant's involvement in the other

sexually assaultive behavior under § 10-923(e)(3).

---

[24] Nothing we say should be read as permitting the State to use propensity evidence in lieu of its obligation to prove beyond a reasonable doubt a defendant's guilt based on the evidence related to the offense currently charged.

With respect to "manner," Maryland Rule 5-403 permits a trial court to exclude a piece of otherwise relevant evidence for a variety of reasons, not just unfair prejudice. Under that rule, the court also can consider whether the evidence would confuse the issues, mislead the jury, amount to an undue delay or waste of time, or represent cumulative evidence. Md. Rule 5-403. Arguing that a piece of evidence likely is to produce a "mini trial" is a hallmark invocation of confusing the issues or an undue delay. *See Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (affirming trial court's decision to exclude prior complaint evidence against defendant-police officer because defendant would have challenged each complaint, resulting in a mini trial); *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006) (affirming district court's exclusion of witness' prior conviction for murder because not probative as to truthfulness or untruthfulness and potential to cause an unnecessary mini trial); *United States v. Fonseca*, 435 F.3d 369, 376 (D.C. Cir. 2006) (calling a police officer to testify on a collateral issue would have caused a delay and a mini trial, both of which FRE 403 seeks to avoid). For that reason, we agree that the manner of presentation of evidence of other sexually assaultive behavior may be appropriate for a circuit court to consider. Like with "need," however, we think consideration of "manner," if raised by a party, is an argument better addressed when a circuit court exercises its discretion whether to admit the evidence only once the court has determined that the factors listed in (e)(1) through (4) have been satisfied.

***C.*** *** The Motions Judge Did Not Abuse His Discretion When He Determined That The Danger Of Unfair Prejudice Did Not Substantially Outweigh The Probative Value Of Petitioner's Prior Conviction, And Petitioner Waived Any Argument That The Circuit Court Sua Sponte Should Have Limited The Scope Of The State's Evidence***

As previously stated, it is incumbent upon the parties to argue any factor they deem relevant to the inquiry under CJP § 10-923(e)(4). Petitioner argues in this Court that his 2010 conviction is both dissimilar to and more inflammatory than his assault on A.H. But Petitioner failed to make any argument concerning inflammatory nature in the circuit court. Concerning subsection (e)(4), he argued only that the facts of his 2010 conviction were too dissimilar from his assault on A.H.[25] Thus, Petitioner has forfeited any argument that the circuit court erred by improperly weighing the inflammatory factor, and we consider only Petitioner's arguments regarding similarity. *See* Md. Rule 8-131(a).

---

[25] Although Petitioner's trial counsel noted that Petitioner's prior conviction was 10 years old, he did not argue that temporal proximity was a factor weighing in favor of exclusion under CJP § 10-923(e)(4). At the motions hearing, trial counsel stated:

> But we are talking about an allegation from ten years prior of sexual assault on an adult. The idea that this evidence could somehow be introduced as it relates to rebutting what is going to happen which is an attack on the victim's credibility, the fact that [Petitioner] was convicted of sexually assaulting an adult has very little probative value, if any, I would suggest none, or as it relates to the allegations of sexual assault upon minor victim, which have to say, I don't see even if the Court wanted to suggest or conclude that there was an opportunity to cross-examine, and there is nothing in the record that suggests that [Petitioner] had an opportunity to cross-examine any of these individuals.

Rather, the thrust of trial counsel's arguments went to confrontation under subsection (e)(2) and similarity under subsection (e)(4).

As to similarity, Petitioner highlights the following differences between the two cases: the insertion of foreign objects on one victim versus performing fellatio and anilingus on the other, without the use of foreign objects; adult victim versus minor victim; no familial relationship versus a familial relationship; unconsciousness of one victim versus consciousness of the other; and, if conscious, ability of adult victim to have legally consented to the sexual acts versus inability for the minor victim to consent to any sexual act. The State, on the other hand, believes there are enough similarities between the two assaults. It argues that both involved vulnerable male victims who were assaulted in the anal area.

The standard of review in this case bears repeating: abuse of discretion. To rule in Petitioner's favor, we must be prepared to find that the motions judge's decision was so far removed from any center mark imagined by this Court that it places that decision "beyond the fringe of what we deem minimally acceptable." *Matthews*, 479 Md. at 305. We cannot say that occurred here. As the Appellate Court noted, the motions judge focused on what he saw as the common denominator between the two assaults: consent, *see Woodlin*, 254 Md. App. at 705–06, questioning whether it "matter[ed]," that one victim was adult, and one was a minor. The motions judge considered each side's arguments attempting to highlight the similarities or differences, ultimately concluding—in his discretion—that the two events were "consistent enough," to find that the danger of unfair prejudice did not substantially outweigh the probative value of Petitioner's 2010 conviction. Armed with plausible interpretations supporting either side, we will not superimpose our judgment over the motions judge's well-supported determination. *See Matthews*, 479 Md. at 305. In other

words, we cannot say that no reasonable person would have concluded as the motions judge did. *See Williams*, 457 Md. at 563.

Petitioner also asks this Court to address an argument that the Appellate Court determined was waived: whether the circuit court "nonetheless erred in admitting all the evidence concerning [the] past offense" and "not using its discretion to limit the admission to the minimal facts necessary to achieve the prosecution's goal of bolstering [A.H.'s] credibility." We agree with the Appellate Court that this issue is not preserved for appellate review. *Woodlin*, 254 Md. App. at 708–13. Giving every benefit of the doubt to Petitioner, trial counsel knew as early as the October 2020 pre-trial conference that the State was seeking to introduce the entire 2010 plea transcript, testimony from Cpl. Creason, and a true test copy of Petitioner's conviction, and the State provided the entire plea transcript to Petitioner on multiple occasions. Petitioner did not object to the *scope of the evidence* at the motions hearing, the October 2020 conference, or at trial when the State officially introduced it. To the contrary, he only ever argued at the motions hearing that the court should exclude *all* evidence of his 2010 conviction, and his objections were to the admissibility of the entirety of the evidence offered by the State, not specific portions. Petitioner's decision not to ask at any point for the motions judge or the trial judge to limit the scope of the State's evidence means that this issue was not preserved for appellate review. *See* Md. Rule 8-131(a). Indeed, after learning at the October 2020 pre-trial conference the *exact* scope of the evidence the State intended to introduce, trial counsel told the motions judge that he had no further questions and simply would object, when

appropriate, at trial. Trial counsel's objections at trial, as to this issue, only ever concerned what he believed was a confrontation issue under CJP § 10-923(e)(2).

Thus, his argument that the circuit court had an independent duty to limit the scope of the State's evidence is not preserved, and we see no basis to exercise our discretion to review it.[26] *See Conyers v. State*, 367 Md. 571, 594 (2002) (describing appellate review pursuant to Rule 8-131(a) as an "exceptional circumstance" and "discretionary, not mandatory").

## IV
## CONCLUSION

The plain, unambiguous language of CJP § 10-923(e)(4) does not require circuit court judges to consider in every case any particular factor when balancing evidence of a defendant's other sexually assaultive behavior against the danger of unfair prejudice, and we decline to impose such a requirement. Nevertheless, as outlined above, there are various factors that a circuit court *may* consider during that balancing exercise, and it

---

[26] Although we are satisfied that basic waiver principles resolve this issue, we cannot ignore the possibility that Petitioner's failure to make any such argument in the circuit court could have been a strategic trial decision. Petitioner knew the jury was going to hear *something* about his prior conviction. The only determination left in which he had any potential say was *how many* details about it would go before the jury. Petitioner could have determined that, if the jury were bound to hear about his prior conviction, it was in his best interest that it hear *everything*, including the dissimilarities that provided a basis for arguing that the earlier incident was not relevant. Absent the full details of his past criminal actions, the jury possibly could speculate about the specific conduct that formed the basis for that prior conviction, creating the potential that it would convict on propensity grounds. We naturally cannot know whether this indeed was Petitioner's reasoning for not advancing an argument to limit the scope of the State's evidence. But, if it is, he cannot have it both ways. He cannot now claim error having had the benefit of testing what he thought was sound trial strategy—merely because that strategy did not pay off.

40

generally is incumbent on the parties to bring any factor they deem applicable to the circuit court's attention. Circuit courts must balance and weigh all appropriate factors—just as they would in any other case under Maryland Rule 5-403—before deciding whether the danger of unfair prejudice substantially outweighs the probative value of evidence of a defendant's other sexually assaultive behavior. If the circuit court determines that the State has satisfied § 10-923(e)(1)–(4), then—and only then—may the circuit court exercise discretion to admit or exclude the evidence in question.

Here, the motions judge did not abuse his discretion in determining that the danger of unfair prejudice did not substantially outweigh the probative value of Petitioner's 2010 conviction. The motions judge considered the parties' arguments as to the similarity between the two acts—the only factor raised by Petitioner—and believed that a lack of consent from vulnerable male victims, who experienced an assault to their anal area, was enough of a similarity to outweigh the danger of unfair prejudice. We cannot say that determination, after weighing evidence from both sides, constitutes an abuse of discretion. Petitioner also waived any argument that the circuit court *sua sponte* should have limited the scope of the State's evidence. Therefore, we affirm Petitioner's conviction.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

41

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/22a22cn.pdf