*Gardener Green v. State of Maryland*, No. 0854, September Term, 2022. Opinion by Ripken, J.

**CRIMINAL LAW – EVIDENCE – SEXUALLY ASSAULTIVE BEHAVIOR – FABRICATION**

CJP § 10-923(e)(1)(ii) permits the trial court to admit evidence of sexually assaultive behavior to "[r]ebut an express or implied allegation that a minor victim fabricated the sexual offense." CJP § 10-923(e)(1)(ii). The sexual offense may include an "act that involves sexual molestation or exploitation of a minor." CR § 3-602(a)(4)(i). There is an implied allegation of fabrication when the defendant alleges that the victim fabricated a detail that, if accepted, would enable a jury to find an act criminal, even if the defendant admits to the central act itself. Here, the appellant's act of masturbating, specifically while looking at the minor victim, is what gave rise to the criminal offense for which he was charged. Because the appellant denied looking at the minor victim while masturbating, the appellant implicitly alleged that the minor victim fabricated the sexual offense.

**CRIMINAL LAW – EVIDENCE – SEXUALLY ASSAULTIVE BEHAVIOR – BALANCING PROBATIVE VALUE AND PREJUDICIAL EFFECT**

Evidence of sexually assaultive behavior can be admitted "if the court finds and states on the record that . . . [t]he probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." CJP § 10-923(e)(4). The probative evidence of appellant's prior conviction for sexual abuse of minor was not substantially outweighed by the danger of unfair prejudice where the two offenses were similar.

**CRIMINAL LAW – EVIDENCE – PRIOR BAD ACTS**

Where evidence of appellant's prior offense was admitted and litigated throughout trial, the circuit court did not "reopen" the State's case by conducting a Rule 5-404(b) analysis on evidence that had already been admitted. The trial court did not err in admitting evidence of appellant's prior conviction under Rule 5-404(b) and instructing the jury in accordance with its ruling.

**CRIMINAL LAW – SUFFICIENCY OF THE EVIDENCE**

CR § 3-602 prohibits a "parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor" from committing "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." CR § 3-602(a)(4)(i), (b)(1). There was sufficient evidence for a jury to find that the appellant committed sexual abuse of a minor, as defined by CR § 3-602, by improperly using and taking advantage of the minor victim for his own benefit while engaging in sexual conduct.

Circuit Court for Wicomico County
Case No. C-22-CR-20-000527

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 0854

September Term, 2022

_____

GARDENER GREEN

v.

STATE OF MARYLAND

_____

Leahy,
Ripken,
Woodward, Patrick L.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Ripken, J.

_____

Filed:   October 25, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

In April of 2022, a jury in the Circuit Court for Wicomico County found Appellant, Gardener Green ("Green"), guilty of two counts of sexual abuse of a minor and one count of indecent exposure. The court sentenced Green to 28 years of incarceration. Green noted this timely appeal. For the reasons to follow, we shall affirm.

## ISSUES PRESENTED FOR REVIEW

Green presents three issues for our review:[1]

I.     Whether the circuit court erred when it admitted evidence of Green's prior conviction for sexual abuse of a minor pursuant to § 10-923 of the Courts and Judicial Proceedings Article.

II.    Whether the circuit court erred when it admitted evidence of Green's prior conviction for sexual abuse of a minor pursuant to Maryland Rule 5-404(b).

III.   Whether the evidence was sufficient to convict Green of sexual abuse of a minor.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim in this case, K.,[2] spent the summer of 2020 with her grandmother, L.,[3] at L.'s house in Fruitland, Maryland. Green, L.'s husband and K.'s step-grandfather, also

---

[1] Rephrased from:
    I.    Did the trial court err by allowing the State to introduce evidence of Mr. Green's 2012 offense under CJ § 10-923?
    II.   Did the trial court err by ruling, after both sides had rested, that evidence of Mr. Green's 2012 offense was admissible under Rule 5-404(b), and, in accordance with that ruling, by instructing the jury that it could consider evidence of the 2012 offense "on the question of intent"?
    III.   Is the evidence insufficient to sustain Mr. Green's convictions for child sex abuse?

[2] To protect the child's identity, we refer to the child as "K."

[3] To protect the child's identity, we refer to the child's grandmother as "L."

lived at that location. K. was eight years old at the time of the incident, and 10 years old when she testified at trial.

One night during the summer of 2020, per K.'s testimony, K. was watching TV in the living room with Green. It was dark in the living room and K. recalled the only light in the room coming from the TV. There were two couches in the living room, which K. described as the "flower couch" and the "brown couch," both of which faced the TV. K. was sitting on the flower couch and Green was sitting on the brown couch.

K. and Green had been watching a cartoon together for about 20 minutes when Green unzipped his pants, removed his penis, and began masturbating. While Green was masturbating, K. was "trying to focus on the TV," but she noticed Green "glance" at her and make eye contact before returning his focus to the TV. While Green continued to masturbate, L., who was in another room, called out K.'s name because it was time for K. to go to bed. K. then ran into L.'s bedroom but did not tell her grandmother what had occurred because she was scared. K. did not tell anyone about Green's behavior until October of 2020 when she disclosed to her cousin what Green had done.

At trial, a social worker assigned to K.'s case by Child Protective Services testified regarding her forensic interview of K., which was conducted in October of 2020. A recording and a transcript of the interview were admitted into evidence. The interview corroborated K.'s trial testimony.

Detective Jeffrey Wells ("Detective Wells"), the lead investigator in the matter involving Green, also testified at trial regarding his interview with Green. Detective Wells

interviewed Green at the Child Advocacy Center[4] in October of 2020.[5] Green initially denied masturbating in front of K. However, Green later acknowledged he often masturbated in the living room and suggested it was possible that K. saw him. Green theorized K. could have come from another room into the living room to watch TV and that he simply did not see K. while he was masturbating. Green also denied staring at K. while he was masturbating.

During the State's case, after the witness testimony concluded, the State submitted evidence of Green's 2012 conviction for sexual abuse of a minor and read the statement of facts from the plea hearing to the jury.[6] At the conclusion of the evidence, during jury

---

[4] "Child Advocacy Centers are child-centered facilities created to provide a trauma-focused, evidence-based, and multidisciplinary response to child abuse victims through investigations, medical and mental health treatment, and victim services." *Prince George's Cnty. Dep't of Soc. Servs. v. Taharaka*, 245 Md. App. 155, 166 n. 6 (2022).

[5] Detective Wells advised Green before the interview that he was "not under arrest, not detained, and he was free to leave at any point in time." Detective Wells interviewed Green for approximately 45 minutes.

[6] The following factual proffer supporting Green's plea from his 2012 conviction was read to the jury:

> Upon their arrival at the home, the officers were able to . . .determine that there was a sexual assault with respect to a juvenile who was identified as K.C. Her date of birth was . . . making her 13 years of age at the time.
>
> ***
>
> She advised that she was asleep in her aunt's bedroom whose house she was staying at when she woke to her grandmother's husband identified as the defendant Gardener Green with his hand in her pants.
>
> She advised that she was in the room with her other cousins and brothers but no one was awake except for her brother. A further interview by Child Protective Services revealed that as she slept in the room, the defendant, Mr. Green, began to fondle the juvenile victim.

instructions, the court instructed the jury that it could consider evidence of Green's prior offense "only on the question of intent or to rebut an expressed or implied allegation that the minor victim fabricated the sexual offense[.]" Additional facts will be included as they become relevant to the issues.

## DISCUSSION

**I.** **THE COURT DID NOT ERR IN ADMITTING EVIDENCE OF GREEN'S PRIOR CONVICTION PURSUANT TO § 10-923 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE.**

Under § 10-923 of the Courts and Judicial Proceedings Article ("CJP") of the Maryland Code, a "court may admit evidence of sexually assaultive behavior" if the following four factors are met:

(1) The evidence is being offered to:
    (i) Prove lack of consent; or
    (ii) Rebut an express or implied allegation that a minor victim fabricated the sexual offense;
(2) The defendant had an opportunity to confront and cross-examine the witness or witnesses testifying to the sexually assaultive behavior;
(3) The sexually assaultive behavior was proven by clear and convincing evidence; and
(4) The probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

---

She could testify . . . [h]e then placed his hand down the front of her underwear, underneath of the underwear, and inserted his finger into her vagina.

She further stated this lasted approximately a minute or two, and his finger was moving in a circular motion. He then stopped when [the victim's] younger brother came to . . . the door. At the time, the victim left the room, [and] immediately told her grandmother what happened.

When the defendant was confronted, he fled the residence. Mr. Green's date of birth is . . . making him 43 years of age, the victim being 13, and the relationship is he was identified as [the victim's] step-grandfather by marriage.

4

CJP § 10-923(e)(1). "Sexually assaultive behavior" includes "[s]exual abuse of a minor," which is defined as an "act that involves sexual molestation or exploitation of a minor." Md. Code Ann., Crim. Law ("CR") § 3-602(a)(4)(i).

Where, as here, "an order [of the court] involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are legally correct under a *de novo* standard of review." *Mayor & City Council of Balt. v. Thornton Mellon, LLC*, 478 Md. 396, 410 (2022) (internal quotation marks omitted) (quoting *Schisler v. State*, 394 Md. 519, 535 (2006)).

Separately, we review the court's balancing of probative and prejudicial value for an abuse of discretion. *Woodlin v. State*, 484 Md. 253, 268 (2023). There is an abuse of discretion if "no reasonable person would take the view adopted by the [trial] court[] . . . or when the court acts without reference to any guiding principles." *Alexander v. Alexander*, 252 Md. App. 1, 17 (2021) (internal quotation marks omitted) (quoting *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 418 (2007)).

The issues raised under CJP § 10-923 on appeal are whether the court erred in its interpretation of the fabrication element in subsection (e)(1)(ii) and whether the court abused its discretion by failing to weigh the probative value of Green's prior conviction against the danger of unfair prejudice under subsection (e)(4). We address the parties' contentions in turn.

## A. Green Implicitly Alleged That K. Fabricated the Sexual Offense.

CJP § 10-923(e)(1)(ii) permits the prosecution to introduce evidence of sexually assaultive behavior to "[r]ebut an express or implied allegation that a minor victim

fabricated the sexual offense." CJP § 10-923(e)(1)(ii). The sexual offense may include an "act that involves sexual molestation or exploitation of a minor." CR § 3-602(a)(4)(i). For the purposes of CR § 3-602, exploitation of a minor occurs when a defendant "[takes] advantage of or unjustly or improperly use[s] the child for his or her *own* benefit." *Brackins v. State*, 84 Md. App. 157, 162 (1990).

Green argues that he never alleged K. fabricated the event at issue, as required by CJP § 10-923(e)(1)(ii). Rather, Green emphasizes that he admitted to "masturbat[ing] on occasion in the living room," and, though Green could not recall the specific incident at issue, he indicated it was possible that K. had seen him masturbate. Nevertheless, at trial, Green maintained that "he had no intent, no desire, no interest in doing anything with" or "doing anything to [K.]" and disputes K.'s claim that he "looked at her" while masturbating. In his interview, when Detective Wells asked Green whether K. would lie about that, Green replied, "yes, that was not true." According to Green, his statement to the detective was an "allegation of inconsistency between the child's version" and his own, rather than an allegation of fabrication required by CJP § 10-923(e)(1)(ii). The State responds that "a defendant need not assert that the victim fabricated every aspect of an encounter to trigger" the statute as long as the "defendant alleges that the victim fabricated facts establishing a sexual offense[.]" We agree with the State.

The extent to which a defendant must allege that a victim fabricated the sexual offense under CJP § 10-923(e)(1)(ii) is a matter of first impression before this Court. When tasked with statutory interpretation, this Court first looks to the "plain meaning of the language of the statute." *Evans v. State*, 420 Md. 391, 400 (2011) (quoting *Ray v. State*,

6

410 Md. 384, 404 (2009)). "If . . . the language [in the statute] is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute." *Harrod v. State*, 423 Md. 24, 33 (2011) (quoting *Evans v. State*, 420 Md. 391, 400 (2011)). In its discussion of CJP § 10-923(e)(1)(ii), the trial court indicated an "allegation that a minor victim fabricated the sexual offense" could be interpreted to require the defendant to dispute either all or only some of an event. We agree with the circuit court that the plain language of the statute is ambiguous.

We proceed by examining the legislative history. "In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision." *Harrod*, 423 Md. at 33 (quoting *Evans*, 420 Md. at 400). The intended purpose of CJP § 10-923 was to provide an avenue by which the State could introduce evidence of prior convictions related to sexual acts. Hearing on S.B. 270 Before the S. Comm. On Jud. Procs., 438th Sess. (Md. 2018) (statement of Sen. James Brochin),[7] https://perma.cc/DYZ6-JYQE (advance video to 1:42:00). In the many years it took to work its way through the legislature, CJP § 10-923 was "narrowed significantly" and "greatly." Hearing on S.B. 270 Before the S. Comm. On Jud. Procs., 438th Sess. (Md. 2018) (statements of Sen. James Brochin and Deputy Legis. Officer Cara Sullivan), https://perma.cc/DGE8-K597 (advance video to 1:41:40, 1:47:29).

To be sure, the legislature was aware of the common law propensity rule and its

---

[7] We note Sen. Brochin's comments as particularly reliable in that he was the lead sponsor of the Senate Bill and had introduced versions of the bill thirteen times over sixteen years.

multiple exceptions, yet it chose to narrow the application of CJP § 10-923. The common law propensity rule "prohibits the use of character evidence to show a person's propensity to act in accordance with his or her character traits or prior acts." Floor Report, H.B. 301 at 2 and Floor Report, S.B. 270 at 2. In summarizing the current law, the Floor Reports[8] highlighted exceptions under both Federal Rule of Evidence 404(b) and Maryland Rule 5-404(b), which prohibit the admission of such evidence unless it is used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Floor Report, H.B. 301 at 2–3 and Floor Report, S.B. 270 at 3. The Floor Reports also noted a sexual propensity exception in federal evidentiary law. Floor Report, H.B. 301 at 2 and Floor Report, S.B. 270 at 2–3. Specifically, Federal Rules of Evidence 413 and 414 create exceptions to Federal Rule 404(b)'s exclusion of propensity evidence and allow evidence of prior sexual assault and prior child molestation offenses to be considered for "any matter to which it is relevant." Fed. R. Evid. 413(a), 414(a); *see Woodlin*, 484 Md. at 266 n. 12. Although the legislature noted these exceptions, it chose not to adopt such broad language in § 10-923. Rather, the legislature limited the application of the statute to two enumerated circumstances: (1) proving lack of consent, or (2) rebutting an implied or express allegation of fabrication.[9]

---

[8] In analyzing a statute, Floor Reports often serve as "key legislative history documents." *Hayden v. Md. Dep't of Nat. Res.,* 242 Md. App. 505, 530 (2019) (quoting *Blackstone v. Sharma*, 461 Md. 87 (2018)); *see also* Jack Schwartz & Amanda Stakem Conn, The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History, 54 Md. L. Rev. 432 (1995) (identifying floor reports and fiscal notes as potentially valuable sources of legislative purpose).

[9] In addition, the legislature struck language in the statute requiring the court to consider

Here, Green specifically disputes the portion of K.'s testimony that, if accepted by a jury, would supply a necessary element of the offense. By looking at K., Green transformed the act of masturbating into a sexual offense which involved using a child "for his or her *own* benefit." *Cf., e.g.*, *Brackins*, 84 Md. App. at 162 (characterizing a polaroid picture taken of defendant's twelve-year-old stepdaughter as "damning evidence of the act of exploitation"); *Wicomico Cty. Dep't of Soc. Servs. v. B.A.*, 449 Md. 122, 139 (2016) ("[S]eemingly innocuous actions may nonetheless be sexually exploitative if . . . they are sexual in context, and the adult performing the actions receives a benefit from them."); *Schmitt v. State*, 210 Md. App. 488 (2013) ("The video of appellant masturbating on the same memory card as the video of [the minor victim] dressing provides the jury with a basis to conclude that appellant's action in taping [the minor victim] constituted exploitation of a sexual nature."); *Scriber v. State*, 236 Md. App. 333, 349–50 (2018) (agreeing with the court that pictures taken of the victim's backside were exploitative). It is only this context, supplied by K.'s testimony, that makes Green's masturbation a crime, and it is only this portion of K's testimony that Green disputes.

At a minimum, there is an implied allegation of fabrication when the defendant

---

"whether the issue for which the evidence of the sexually assaultive behavior is being offered is in dispute." *See* An Act Concerning Courts – Evidence of Sexually Assaultive Behavior – Admissibility (Repeat Sexual Predator Prevention Act of 2018), S.B. 270, 2018 Sess. (Md. 2018), https://perma.cc/AP93-ZK8J. The sponsor of the statute stated before the vote that "the house amendments *strike a requirement the court consider certain factors* determining whether to admit evidence of sexually assaultive behavior." Senate Floor Actions: SB 270, 438th Sess. (Md. 2018), https://perma.cc/HSV9-UVW4 (statement of Sen. James Brochin) (emphasis added) (advance video to 59:00). We note the broader and more discretionary reach of the statute that resulted.

alleges that the victim fabricated a detail that, if accepted, would enable a jury to find an act criminal, even if the defendant admits to the central act itself. If we were to conclude otherwise under such circumstances, sexual offenders could evade the application of the statute simply by agreeing with any innocent act described by victim testimony. Such a result would unreasonably lessen the effectiveness of the statute and be incompatible with the statute's intended purpose. *See Comptroller of Md. v. FC-GEN Operations Invs.*, 482 Md. 343, 380 (2022) ("In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.") (quoting *Wheeling v. Selene Fin. LP*, 473 Md. 356, 377 (2021)).

Finally, we are unpersuaded by Green's argument that he could not have alleged K. fabricated the sexual assault, given that, in his interview with the detective, he claimed K. had no reason to lie. The truthfulness of the witness need not be expressly disputed for evidence to be admitted under CJP § 10-923. *See Finke v. State*, 56 Md. App. 450 (1983). In *Finke*, for example, rather than expressly calling the witness's truthfulness into question, defense counsel focused on the witness's difficulty in remembering the specifics of the incident. *Id.* at 493. The Court nonetheless found that there was an alleged fabrication due to the dispute of important facts, such as the incident's time and place. *Id.* ("[I]f [the witness] was shown not to accurately remember the facts to which he testified, then, in effect, he was 'making it up' or 'fabricating it.'").

Here, Green's act of masturbating, specifically while looking at K., is what gave rise to the criminal offense for which he was charged. Because Green denied looking at K.

10

while masturbating, he implicitly alleged that K. fabricated the sexual offense.[10]

## B. The Court Did Not Abuse Its Discretion in Balancing the Probative Value and Danger of Unfair Prejudice of the Evidence.

As previously stated, evidence of sexually assaultive behavior can be admitted "if the court finds and states on the record that . . . [t]he probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." CJP § 10-923(e)(4). "Evidence may be unfairly prejudicial if it might influence the jury to disregard the evidence or lack of evidence regarding the particular crime." *Odum v. State*, 412 Md. 593, 615 (2010) (internal quotation marks omitted) (quoting Lynn Mclain, Maryland Evidence State and Federal § 403:1(b) (2009 Supp.)).

Green claims that the circuit court's "analysis was so sparse and perfunctory as to not constitute any analysis at all." He argues that the prior conviction was so inflammatory that the unfair prejudice outweighed any probative value. Accordingly, Green contends

---

[10] We note that the language in the fabrication prong is similar to that of Rule 5-802.1(b), Maryland's hearsay exceptions rule, which provides that a "statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication" will not be excluded under the hearsay rule. Although CJP § 10-923 and Rule 5-802.1 concern the admission of different forms of evidence, both serve to establish the truthfulness of a witness's statements and to rebut allegations of fabrication through the introduction of otherwise inadmissible evidence.

Multiple cases demonstrate that disputing a non-essential element of an offense is sufficient to admit the evidence at issue under Rule 5-802.1. For example, in *Hajireen v. State*, 203 Md. App. 537 (2012), the defendant denied digitally penetrating the victim. *Id.* at 551. Even though digital penetration was not a necessary element of the sexual offense at issue, the Court perceived the defendant's denial of such as amounting to a claim that the victim had fabricated "the entire incident." *See id.* at 554 (finding the evidence inadmissible on other grounds); *see also Acker v. State*, 219 Md. App. 210, 218, 234 (2014) (affirming the trial court's admission of evidence under Rule 5-802.1(b) where the defendant denied a non-essential element of the offense by "den[ying] any responsibility for the [inappropriate] interaction").

11

that the circuit court abused its discretion in finding that CJP § 10-923(e)(4) was satisfied. The State responds that this issue was not preserved for appellate review. In the alternative, the State argues that the circuit court conducted the required analysis using the correct legal standard, even if it did not explicitly state every aspect of its reasoning.

At the outset, we address the State's claim regarding the preservation of Green's arguments. Maryland Rule 8-131 provides that a reviewing court will not decide any non-jurisdictional issue "unless it plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8-131(a); *see Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 543 (2013) (explaining that, "[t]he use of the word 'or' indicates that an issue must be raised in or decided by the trial court, but it is not necessary for both to occur to preserve the issue for appellate review"); *see also Goff v. State*, 387 Md. 327 (2005) (finding that an issue was preserved for appellate review where "the specific question . . . was considered and decided by the trial court, even if not argued by the parties.") Here, the issue was preserved because it was decided by the court when it found that the "evidence [was] probative, and that probative value [was] not substantially outweighed by the danger of unfair prejudice[.]"

In *Woodlin v. State*, this Court analyzed factors such as the victims' vulnerability, sex, consciousness, consent, and the manner of assault to find that the two sexual offenses at issue were sufficiently similar for the probative value to substantially outweigh the danger of unfair prejudice. 254 Md. App. 691, 705–06 (2022). The Supreme Court of Maryland granted *certiorari* and affirmed. *Woodlin*, 484 Md. at 295. The Supreme Court expressly declined to assign a "specific factor or factors to consider" under CJP

12

§ 10-923(e)(4)'s balancing test, observing that the legislature "intended to give circuit courts wide discretion . . . to weigh probative value against the potential dangers of unfair prejudice. *Id.* at 280. The *Woodlin* Court relied on "the plain language of [CJP § 10-923(e)(4)]—which mentions no factor that circuit courts must consider—and [the Court's] general approach to the exercise of discretion under Rule 5-403." *Id.* at 282. The Supreme Court explained:

> Any similarity analysis necessarily involves an assessment of both similarities and differences. Counting similarities while ignoring differences, or vice versa, would result in an incomplete analysis. As the Appellate Court rightly noted, as the similarity between the two acts increases, so too does the evidence's probative value. *Woodlin*, 254 Md. App. at 704, 276 A.3d 634. As similarity decreases (i.e., as *dissimilarity increases*), the more likely it is that the evidence's probative value will be outweighed by the danger of unfair prejudice. *Id.*
>
> Once a party raises as an applicable factor the similarity or dissimilarity of the acts, then circuit courts generally should assess at least two categories: (1) the characteristics of the victim and (2) the nature of the defendant's conduct. To the former, the analysis includes the victim's age, biological sex, gender identity, and status (mental state, physical prowess, capabilities, etc.); as to the defendant's conduct, the assessment includes both the method of perpetrating the sexual offense (use of violence/weapons, use of drugs to incapacitate, abuse of a position of trust, etc.) and the sexual offense itself (the specific acts committed, the location of the assault, etc.).

*Id.* at 284–85.

During the circuit court proceedings in this case, the State argued that Green's 2012 offense was sufficiently similar to the offense raised in the instant case:

> [I]n this circumstance the prior sexual assault was relatively close in time, it's about an eight year gap between the two of them. It's similar in the sense that it is sex abuse of a minor by a household or family member. Again it's another step granddaughter of his. The victim in this case is eight, the other one back then was 13 years old.

In consideration of the parties' arguments and the evidence, the circuit court expressly

13

noted that "any prior conviction, especially a conviction of a sexual nature, carries the danger of unfair prejudice," and that CJP § 10-923 "contemplates and uses the term[,] not just outweighed[,] but substantially outweighed." The trial judge reasoned, "[B]ased on the sort of denial of what I believe the alleged child victim's story is," the evidence of Green's 2012 offense "is probative, and that probative value is not substantially outweighed by the danger of unfair prejudice[.]" The court thus ruled the evidence admissible.[11]

Green's 2012 and 2020 offenses are similar because they both involved sexual abuse of Green's step-granddaughters—vulnerable minors who were living in the same household as Green. Both victims were unable to consent due to their age, and both were, at some point, consciously aware of the offense as it transpired. For example, Green's 2012 victim stated she was awake for "a minute or two" while the sexual assault transpired, and K. testified that Green made eye contact with her while masturbating. The victims have the same grandmother, and, in both cases, the abuse stopped because a family member interrupted.

Regarding the differences between the offenses, the 2012 victim was asleep in her bedroom and woke up to the assault, whereas K. was awake the entire time and inside the

---

[11] We decline to find, as Green contends, that the court's "analysis was so sparse and perfunctory as to not constitute any analysis at all." The circuit court does not need to spell out "every thought and step of logic in weighing its considerations." *Ridgeway v. State*, 140 Md. App. 49, 69 (2001). "[A]bsent a misstatement of law or conduct inconsistent with the law, a 'trial judge is presumed to know the law and apply it properly.'" *Medley v. State*, 386 Md. 3, 7 (2005) (quoting *State v. Chaney*, 375 Md. 168, 179 (2003)). Hence, we presume that the court considered the relevant legal standard it invoked and arguments it heard when weighing the evidence's probative value and danger of unfair prejudice to Green. *See Medley*, 386 Md. at 7.

14

living room which Green also used as a bedroom. Green's 2012 offense involved physically touching and digitally penetrating the minor victim, while the 2020 offense involved Green touching himself while looking at K. The Court in *Woodlin* found the prior conviction reasonably similar even though one assault had occurred with a foreign object and the other through touching and licking. 484 Md. at 292–93, 295. Similarly, the fact that Green's method of abuse differed between the offenses—one physical and the other non-physical—is not dispositive. "Reversal should be reserved for those rare and bizarre exercises of discretion that are, in the judgment of the appellate court, not only wrong but flagrantly and outrageously so." *Oesby v. State*, 142 Md. App. 144, 167–68 (2002). This is not one of those cases.

Green additionally claims that the eight and a half years between the two incidents reduced the probative value of the evidence.[12] Although the time between incidents may be a relevant factor for the court to consider, it is not dispositive of the prior conviction's probative value.[13] *See Woodlin*, 484 Md. 253 at 264, 278, and 295 (2023) (finding the trial

---

[12] We note that the record contained in the court file and available to the trial judge shows that Green was not released on probation for the 2012 conviction until June of 2018 and, therefore, was arrested for the 2020 offense involving K. after only two years of renewed access to minors.

[13] This Court has similarly considered the time differential to assess the inflammatory and prejudicial nature of evidence under different statutes. For example, when considering the admissibility of evidence under CR § 3-319(b)(3), "a court should consider . . . the proximity in time between the prior sexual conduct and the complainant's allegations." *Westley v. State*, 251 Md. App. 365, 410 (2021). Similarly, Maryland Rule 5-609(a)(2) requires consideration of "the point in time of the conviction and the defendant's subsequent history" when weighing the probative value of the evidence against the danger of unfair prejudice. *Jackson v. State*, 340 Md. 705, 717 (1995).

court did not abuse its discretion in admitting evidence of defendant's conviction for sexual assault from nine years before the incident at issue). Here, we conclude that the circuit court did not abuse its discretion in admitting evidence of Green's 2012 conviction.

## II. THE COURT DID NOT ERR IN PERMITTING THE JURY TO CONSIDER EVIDENCE OF GREEN'S PRIOR CONVICTION UNDER MARYLAND RULE 5-404(b).

At trial, after the parties rested their cases, the court proceeded to finalize the jury instructions with the parties. With respect to the instruction regarding Green's 2012 conviction, his counsel informed the court that it had only ruled on the admissibility of the prior conviction under CJP § 10-923, not Rule 5-404(b), at the May 14, 2021 hearing:

> [DEFENSE COUNSEL]: My notes didn't indicate a ruling from the Court with regard to 5-404, just under 10-923. My recollection of it being admitted was that the discuss[ion] . . . solely revolved around 10-923, the 10-923 hearing, and that it was admitted under that statute.
>
> Given that that was the discussion at the time that the evidence was entered and throughout trial, certainly, additional arguments weren't made to Your Honor regarding 5-404, and I would argue that it wasn't admitted under 5-404. It was admitted under 10-923, so I don't believe it's appropriate to give the instruction that applies under 5-404 with regard to the need that it be -- the language that it has to be relevant to intent, specifically. Because under 10-923, it would only need to be relevant as to rebut an expressed or implied allegation that the minor victim fabricated the sexual offense.
>
> And while I object to that ruling from the previous Court, I acknowledge that that was the ruling of the Court.
>
> ***
>
> [STATE] . . . I argued intent, motive as being sexual gratification and absence of mistake in light of the defendant's statements, that it would have happened accidentally. So I argued all three.
>
> ***
>
> I know that the Court did the 10-923 analysis because I have some notes, but some very brief on that, and I argued both, specifically, because for a 10-923 to rebut an expressed and implied that, in effect, the minor victim fabricated. The allegation of fabrication is very minimal to the extent that it was that she wouldn't have been -- she said that he looked at her. He denied -- or he called her a liar to that extent.

16

My notes just said that the Court found that that element was satisfied because he said, the defendant had said that she lied about him looking at her.

So I think the Court did do that analysis pursuant to 10-923. . . . I think this Court could make that determination that it is relevant, also, based on the evidence that was presented, the facts from the prior case being so similar, and those were the arguments that were made is that if the facts -- the defense -- that he committed the act for which he's on trial but did so by mistake. In order for the exception to apply to the crime – the defendant allegedly committed by mistake must be the same crime or a bad act for which the defendant is currently on trial.

So I think the Court based on the evidence that was presented can still make that determination, that it is relevant for the purpose of intent as to his culpable state of mind. The fact that the issue is that small element of his state of mind, the fact that we are dealing with a case that happened two years ago, that there is limited evidence beyond a reasonable doubt that, I think it makes it highly probative to rebut his claim of an innocent accident in this case.

Green's counsel refuted Rule 5-404(b)'s applicability to the evidence:

[DEFENSE COUNSEL]: As to the 5-404 argument, I would just note that under the evidence that came before Your Honor, the indication from or the testimony was that there was, essentially, a brief glance over towards [K.] is what she described, which is even if the Court ruled on 5-404 at the time of the hearing, that wasn't the impression I think that the interview gave without follow-up. There was just a statement that he looked at her.

But her description at trial is much more detailed, I would indicate, and much more indicative of a brief glance as opposed to a long stare or what may have been implied by just the simple statement that was made in the recorded interview.

Under the evidence presented to this Court, I don't believe that given the nature of the previous conviction which was a completely different act on a different aged person under different circumstances in 2012, so a number of years ago from the time that this event is alleged to have occurred, that it is relevant to intent.

I think it is far more prejudicial than it is probative to come in for that purpose under that Rule. Most of the case law that I saw regarding prior acts of a sexual nature that were admitted in involved the same victim under 5-404(b) to rebut intent or mistake under those circumstances, and it was permissible because it was the same victim and was recent in time to the allegations being made in the case that was on trial.

17

In this case, we do not have those circumstances. This is a different victim at a much different time under very different circumstances with a different act described.

So for all of those reasons, I would indicate that it is far more prejudicial than probative to come in under 5-404(b) for the purpose of showing intent. . . . I think it just shows a propensity.

Thereafter, the court considered whether to permit the jury to consider the evidence under Rule 5-404(b):

[THE COURT]: Well, under Rule 5-404(b), there is a non-exhaustive list of things that the -- that prior bad acts, whether they're crimes or not, may be considered, but there is, obviously, a test that has to occur. But the Rule, itself, says evidence of other crimes, wrongs, or other acts including delinquent acts are not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or accident or in conformity with Rule 5-413.

And the case law -- in this case, clearly, there's already been a ruling that such evidence of the prior conviction may be considered by the jury to rebut an expressed or implied allegation that the minor victim fabricated the sexual offense.

The two statutes are similar in terms of their balancing tests, but they are not the same. And under Rule 5-404(b), the Court has to determine whether the evidence fits within a legitimate exception, has to make preliminary fact findings, then has to weigh the necessity for and probative value of the other crimes evidence against the undue prejudice.

The analysis, like I said, is very similar to the one under 10-923. In this case, it does appear that this would fit into the intent, at a minimum, fit into the intent category, given that intent is at issue here.

Obviously, the Court considers the similar nature of the crimes because that has the ability to be, while perhaps more indicative of intent, also more prejudicial toward the defendant. The Court has to determine that the prior event occurred, which clearly there is a conviction, so it did occur.

***

So, certainly, it's relevant for purposes of intent in this case. I also have to find that the act was established by clear and convinced evidence, which I can so find. And then I have to do an evaluation whether this is more probative than prejudicial, essentially, a balancing as to how this is going to affect the defendant.

18

In doing that analysis, I do find that this is certainly more probative than it is likely to be unduly prejudicial, so I am going leave the jury instruction to say, intent or to rebut an expressed or implied allegation.

Accordingly, the court instructed the jury, in relevant part:

You have heard evidence that the defendant committed the crime of sex abuse of a minor in 2012. *You may consider this evidence only on the question of intent or to rebut an expressed or implied allegation that the minor victim fabricated the sexual offense*; however, you may not consider this evidence for any other purpose. Specifically, you may not consider it as evidence that the defendant is of bad character or has a tendency to commit crime.

(Emphasis added.)[14]

## A. The Court Did Not "Reopen" the Case After the Parties Had Rested.

Green argues that it was erroneous for the court to "admit evidence of the 2012 offense under Rule 5-404(b)" because "that evidence had not been admitted under Rule 5-404(b) at the time the State and the Defense rested their cases." In response, the State maintains that it was within the court's discretion to consider, after the parties rested, how the jury could use the admitted evidence. Per the State, the timing with which the court engaged in a 5-404(b) analysis posed no unfair surprise to Green because "the State [had given] pretrial notice under Maryland Rule 5-404, linked Green's prior conviction to 'intent' in its opening statement, and admitted and presented the evidence of Green's 2012

---

[14] After the court's instruction, Green "note[d] an exception consistent with arguments made this morning to the Court with regard to the prior evidence 5-404(b) instruction[,]" thereby preserving his prior arguments regarding the jury's consideration of his prior conviction "on the question of intent[.]" *See* Md. Rule 4-325(f) ("No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.").

offense during its case-in-chief." Furthermore, the State argues that Green's counsel failed to object to the proffered instruction on the basis that a "belated Maryland Rule 5-404(b) ruling would undermine [counsel's] ability to present a defense," and thus prejudice Green. We agree with the State.

Green relies on the Supreme Court of Maryland's opinion in *State v. Payton*, 461 Md. 540 (2018) to support the assertion that the circuit court abused its discretion by ruling on the State's 5-404(b) motion after the parties rested. This reliance is misplaced. In *Payton*, after the parties had rested, the defense moved for a judgment of acquittal, which the trial court denied "even though [it] was convinced that the State had not met its burden." *Id.* at 556. Rather than rule on the motion, the court, *sua sponte*, allowed the State to elicit new evidence by recalling an expert witness, based on the court's consideration of the severe nature of the charges at stake. *Id.* at 545–46, 562 ("[I]f this were a lesser crime than a murder, I might not be so generous."). While the Supreme Court noted that "trial judges have discretion to allow the State to reopen its case-in-chief," in this case, "the trial judge abused that discretion." *Id.* at 569.

Here, the evidence of Green's 2012 offense was admitted and litigated throughout the course of the trial. We are not persuaded that the circuit court "reopened" the State's case by conducting a Rule 5-404(b) analysis on evidence that had already been admitted.[15]

---

[15] We note that perhaps a best practice would have been to rule on the prior conviction evidence under Rule 5-404(b) prior to the parties resting their cases. However, the timing of the court's ruling had no practical impact in this case because the evidence had already been admitted under CJP § 10-923 and the State had filed a 5-404(b) motion in advance of trial and also informed the jury in its opening statement that they would be able to consider the evidence for the purpose of intent.

**B. The Court Did Not Abuse Its Discretion in Its Rule 5-404(b) Analysis or in Instructing the Jury on the Question of Intent.**

Green argues that, even if the court's ruling under Rule 5-404(b) was permissible, the court abused its discretion because its 5-404(b) "analysis was so barebones and perfunctory so as not to constitute any analysis at all" as to the evidence's relevance to the question of intent. Furthermore, Green contends that the facts of his prior offense are too dissimilar from the case at bar for the evidence's probative value to outweigh the danger of unfair prejudice. The State responds that the court engaged in the requisite Rule 5-404(b) analysis. The State argues that the court properly exercised its discretion in weighing the probative value of the evidence against the danger of unfair prejudice. Accordingly, the State maintains that the court properly instructed the jury that it could consider the evidence on the question of intent. We agree with the State.

Generally, "[e]vidence of other crimes, wrongs, or other acts . . . is not admissible to prove the character of a person in order to show action in the conformity therewith." Md. Rule 5-404(b). However, such evidence "may be admissible for other purposes, such as proof of motive, opportunity, intent, . . . or absence of mistake or accident." *Id.* In order to admit evidence under Maryland Rule 5-404(b), the courts undertake a three-part test to determine: (1) "whether the proffered evidence fits into one of the Rule's exceptions," (2) "whether the accused's involvement in the other crimes is established by clear and convincing evidence," and (3) whether "[t]he necessity for and probative value of the 'other crimes' evidence" outweighs "any undue prejudice likely to result from its admission." *Vigna v. State*, 241 Md. App. 704, 727 (2019); *see also State v. Faulkner*, 314 Md. 630,

634–35 (1989) (adopting the three-part test for the first time).

We are unpersuaded by Green's argument that the court failed to adequately engage in the requisite Rule 5-404(b) analysis. To the contrary, the record demonstrates that the court (1) found evidence of Green's 2012 conviction "relevant for purposes of intent," (2) noted that Green's prior conviction had been established by clear and convincing evidence, and (3) found that the evidence was "certainly more probative than it is likely to be unduly prejudicial." Neither party disputes that Green's prior offense was proven by clear and convincing evidence.[16] Therefore, we limit our analysis to the first and third prongs of the three-part test.

We review the first prong of the test, whether one of the Rule 5-404(b) exceptions applies, *de novo*. *See Vigna*, 241 Md. App. at 727. Rule 5-404(b) permits the admission of other crimes evidence when such evidence has "special relevance—that it 'is substantially relevant to some contested issue and is not offered simply to prove criminal character.'" *Wynn v. State*, 351 Md. 307, 316 (1998) (quoting *State v. Taylor*, 347 Md. 363, 368 (1997)). We agree with the circuit court's assessment that evidence of Green's prior conviction would "at a minimum, fit into the intent category, given that intent is at issue here."

As discussed under our CJP § 10-923 analysis, *supra*, whether Green's actions were conducted with the intention of exploiting K. is precisely what was at issue in this case.[17]

_____

[16] The court admitted into evidence a certified case summary report of Green's prior conviction as well as a transcript of the plea hearing, wherein the court entered a verdict of guilty as to Green's sexual abuse of a minor.

[17] Specifically, during its opening statement, the State explained:

22

Green disputed the issue of intent in his pretrial statements and opening statement to the jury. Green specifically indicated that "he had no intent, no desire, no interest in doing anything with [K.]" or "doing anything to [K.]" Consequentially, evidence establishing that Green had previously engaged in the sexual abuse of a minor, who was also his step-granddaughter, was relevant because it had the tendency to prove that Green intended to use K. for his own sexual gratification while masturbating. The State did not offer the evidence to prove Green's criminal character but, rather, to rebut Green's claim that his offense was an "innocent accident." Having reviewed the parties' arguments throughout the trial, we conclude that the circuit court did not err in finding that the evidence of Green's 2012 conviction was admissible on the question of intent under 5-404(b). Thus, the first prong was satisfied.

Having concluded there is no contest as to the second prong, we next review the third prong, the trial court's balancing of probative value versus danger of unfair prejudice for an abuse of discretion.[18] *Snyder v. State*, 361 Md. 580, 604 (2000). "[T]he concern with

---

Obviously intent is important in this case when you're looking at the fact that [Green] is masturbating and looking at [K.].

\*\*\*

[E]vidence that will also be presented that you can consider is a conviction that Mr. Green has from 2012 for sexual abuse of another minor. . . .

That's relevant sort of for two purposes: one, obviously for [K.]'s credibility, it's relevant; and also, to consider intent, because intent is going to be very important. [Green's] prior conviction becomes relevant to that intent, to [Green's] intent while he was doing that act in front of his 8-year-old granddaughter.

[18] *See* Md. Rule 5-403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

23

prior bad acts evidence is not avoiding any and all prejudice, but avoiding 'untoward prejudice' or 'unfair prejudice' that creates the risk that the jury will convict the defendant for reasons unrelated to his commission of the crimes charged." *Vigna*, 241 Md. App. at 728; *Ford v. State*, 462 Md. 3, 58–59 (2018) ("[T]he fact that evidence prejudices one party or the other, in the sense that it hurts his or her case, is not the undesirable prejudice referred to in Maryland Rule 5-403." (internal quotation marks omitted) (quoting *Odum v. State*, 412 Md 593, 615 (2010))).

Here, the court did not abuse its discretion in balancing the probative value of the evidence and the potential unfair prejudice from Green's prior offense. As we have explained, Green's prior conviction was probative to proof of whether Green acted with the requisite intent when he masturbated in front of K. Moreover, both offenses involved Green's sexual abuse of his minor step-granddaughters. As such, we are persuaded that the probative value of the prior conviction was strengthened by the similarities between the offenses. *See* Discussion Section I.B., *supra*. Moreover, as described previously, the eight-year gap between the two offenses does not deprive the 2012 incident of probative value.

Furthermore, given the relevance of Green's prior conviction and its prior admission under CJP § 10-923, we are unpersuaded that its admission for purposes of intent could have caused the jury to convict Green for reasons unrelated to the charged sexual offense. *See Vigna*, 241 Md. App. at 728. We conclude that the court did not err in admitting evidence of Green's prior conviction under Rule 5-404(b) and instructing the jury in

---

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

accordance with its ruling. Because we conclude that the court did not commit error or abuse its discretion in permitting the jury to consider evidence of Green's 2012 conviction on the question of intent, we need not conduct a harmless error analysis.

**III. THE EVIDENCE WAS SUFFICIENT TO SUPPORT A FINDING OF SEXUAL ABUSE OF A MINOR.**

Green further asserts that the evidence was insufficient to sustain his convictions for sexual abuse of a minor. Specifically, Green contends that the State failed to prove "exploitation" because it failed to prove beyond a reasonable doubt that Green used K. for his own benefit. According to Green, the State conceded at trial that Green could have chosen to masturbate because of what was on TV or his wife's absence, rather than K.'s presence. To the contrary, the State argues that the evidence supported a rational finding of exploitation. The State maintains that the jury could rationally find that Green exploited K. by masturbating in K.'s view with knowledge of her presence, looking at her while masturbating, and continuing to do so after the two made eye contact. The State further asserts that though this was enough to convict Green, the jury could also consider Green's prior sexual abuse of another step-granddaughter as proof of intent.

"When reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the State and assess whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Krikstan*, 483 Md. 43, 63 (2023) (internal quotation marks omitted) (quoting *Walker v. State*, 432 Md. 587, 614 (2013)). As this Court recently reiterated:

> Our role is not to review the record in a manner that would constitute a figurative retrial of the case. This results from the unique position of the fact-

25

finder to view firsthand the evidence, hear the witnesses, and assess credibility. As such, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence. Our deference to reasonable inferences drawn by the fact-finder means we resolve conflicting possible inferences in the State's favor, because we do not second-guess the jury's determination where there are competing rational inferences available.

*Turenne v. State*, 258 Md. App. 224, 236 (2023) (quoting *Krikstan*, 483 Md. at 63–64).

Furthermore, "circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused." *Turenne*, 258 Md. App. at 255–56 (quoting *Neal v. State*, 191 Md. App. 297, 314–15 (2010)).

Green was charged with two counts of sexual abuse of a minor pursuant to CR § 3-602, which prohibits a "parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor" from committing "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." CR § 3-602(a)(4)(i), (b)(1). Specifically, "exploitation" refers to a "parent or person having temporary or permanent custody of a child [taking] advantage of or unjustly or improperly us[ing] the child for his or her own benefit." *Walker v. State*, 432 Md. 587, 619–20 (2013) (quoting *Degren v. State*, 352 Md. 400, 426 (1999)). Additionally, "sexual exploitation is not limited to incidents involving physical contact and can include a wide range of behavior." *Krikstan*, 483 Md. at 51, 53 (noting "an intent by the General Assembly that the statute be interpreted broadly to include a wide range of conduct and to protect children").

This Court held circumstantial evidence was sufficient to find sexual abuse of a

26

minor in *Scriber* and *Turenne*. In *Scriber*, a student testified that the teacher put his phone "almost underneath" the student's skirt, and then positioned his phone in a manner that led the student to believe he was taking pictures. 236 Md. App. at 336. Although there were no images of the student recovered from the teacher's phone, this Court held that the student's testimony was sufficient for a rational trier of fact to find that the teacher engaged in a sexually exploitative act. *Id.* at 352–53.

In *Turenne,* an aide at a daycare center was convicted of sexual abuse of a minor where images of the children's genitalia were found on the aide's phone. 258 Md. App. at 230. This Court concluded that "the combination of the surreptitious manner in which [the aide] took the photos, the photos' location in her camera roll among adult pornography, that she shared some of that adult pornography on her phone with a co-worker, and the absence of any credible, innocuous reason for taking photos of children's genitalia in violation of the daycare's policy" demonstrated sexual gratification. *Id.* at 255. Even though the daycare aide testified that the photos were taken to document children's diaper rashes, this Court noted that, like in *Scriber*, a rational factfinder could have still "found there was 'no satisfactory explanation' for the defendant taking and possessing the photos, other than for sexual gratification." *Id.* at 256 (quoting *Scriber*, 236 Md. App. at 341).

As in *Scriber* and *Turenne*, we are persuaded that there was sufficient evidence for the jury to find that Green committed sexual abuse of a minor, as defined by CR § 3-602, by improperly using and taking advantage of K. for his own benefit while engaging in a sexual act. According to K., Green and K. were watching a cartoon together in the same room when Green unzipped his pants and began to masturbate. Per K.'s testimony, Green

27

looked at K. and made eye contact while he masturbated. A social worker assigned to K.'s case who conducted a forensic interview of K. testified and corroborated K.'s trial testimony. Further, the court admitted into evidence the social worker's interview of K., in which K. stated that Green was looking at K. as he masturbated. Additionally, the court admitted evidence of Green's prior conviction for sexual abuse of a minor and permitted the jury to consider Green's prior conviction on the issue of intent.[19]

Whether or not the State established the reason Green began masturbating, based on the evidence, the jury could reasonably infer that, while masturbating, Green intentionally looked at K. for his own sexual gratification. Furthermore, even though Green posited that K. could have walked by and accidentally seen him masturbate when he was alone in the living room, like in *Turenne* and *Scriber*, a rational factfinder could choose, instead, to believe K.'s testimony and find "no satisfactory explanation" for Green's conduct. *See Turenne*, 258 Md. App. at 256 (quoting *Scriber*, 236 Md. App. at 341). Hence, viewing the evidence in a light most favorable to the State, we conclude the evidence was sufficient to find Green guilty of sexual abuse of a minor.

> **JUDGMENTS OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[19] *See Emory v. State*, 101 Md. App. 585, 629–30 (1994) ("We measure th[e] legal sufficiency on the basis of all of the evidence in the case, that which was improperly admitted just as surely as that which was properly admitted.").